JENNIE KNOTTNERUS v. THE NORTH PARK STREET RAILWAY COMPANY.

*Negligence—Dangerous premises—Operation of switch-back railway —Liability of lessor.*

1. The owner of a pleasure resort and street railway leading to it does not, by leasing the privilege of operating a switchback railway at the resort, and advertising it as one of the attractions of the place, become an insurer against accidents to persons patronizing the lessee, or become liable for his carelessness.

2. Plaintiff was injured while riding on a switch-back railway, operated by the owner at defendant's pleasure resort, by the derailing of the car, caused, as she claims, by a chip having gotten upon the rail through the negligence of defendant's carpenters, who were working near the place of the accident. A witness for plaintiff testified to seeing one chip by the side of the track at the place of the accident, with the shape of the car-

wheel upon it, and other witnesses testified to seeing chips along-side of and on the track.  There was uncontradicted testimony that an hour before the accident a son of the owner of the switch-back was at work with an adz, trimming off the center in between the tracks at the very point of the accident.  And it is held that the jury were not warranted in finding that the accident was occasioned by reason of the carelessness or negligence of defendant's servants in allowing the track to be obstructed.

Error to Kent.  (Grove, J.)  Argued October 12, 1892. Decided October 27, 1892.

Negligence case.  Plaintiff brings error.  Affirmed.  The facts are stated in the opinion.

*Maher & Salsbury,* for appellant, contended:

1. In view of the fact that the switch-back was erected by the defendant upon its own grounds, and as an attraction to its resort, and was advertised by it as such, and the defendant received all of the proceeds of its operation, and that no notice whatever was given either to the plaintiff or the public generally that it was not being operated by the defendant, it is submitted that the defendant should be considered as having invited the plaintiff to visit the resort, and avail herself of the attractions and sources of amusement there, including the switch-back, and that, such being the case, the defendant cannot evade responsibility for the unsafe condition of the switch-back which caused the plaintiff's injuries; citing Cooley, Torts, 606; *McKone v. Railroad Co.,* 51 Mich. 601; *Powers v. Harlow,* 53 Id. 507; *Cross v. Railway Co.,* 69 Id. 363; *Stewart v. Railway Co.,* 80 Id. 166, 171; *Brezee v. Powers,* Id. 172; *Sweeny v. Railroad Co.,* 10 Allen, 368; *Carleton v. Iron Co.,* 99 Mass. 216; *Stroher v. Elting,* 97 N. Y. 102; *Carpenter v. Railroad Co.,* Id. 494; *Railroad Co. v. Gregory,* 58 Ill. 272; *Poor v. Sears,* 154 Mass. 539; *Conradt v. Clauve,* 93 Ind. 476; *Bennett v. Railroad Co.,* 102 U. S. 577; *Smith v. Docks Co.,* L. R. 3 C. P. 326; *Heaven v. Pender,* L. R. 11 Q. B. Div. 503.

2. The operation of the switch-back and the construction of the defendant's music stand were both going on at the same time, and the derailing of the car would be a natural and probable result of the placing of chips upon the track, and one that the defendant and its employés might reasonably anticipate.  As con-

cerns the negligence of Hathaway in failing to remove the chips before allowing the car to run upon the track, it was concurrent with that of the defendant in allowing the chips to go upon the track, and the defendant was liable either jointly with Hathaway, or solely if sued alone; citing *Chapman v. Railroad Co.*, 19 N. Y. 341; *Colegrove v. Railroad Co.*, 20 Id. 492; *Sheridan v. Railroad Co.*, 36 Id. 39; *Webster v. Railroad Co..* 38 Id. 260; *Barrett v. Railroad Co.*, 45 Id. 628.

*More & Wilson,* for defendant.

McGRATH, C. J.   Defendant owns and operates a street railway in the city of Grand Rapids, extending from the center of the city to a pleasure resort known as "North Park," which is also owned by defendant.   Within the park was a switch-back or roller-coaster, owned and operated by one Hathaway.   Plaintiff had taken one of defendant's cars to North Park, and there, while riding upon the switch-back, was injured by the derailing of the switch-back car.

It appears that in the vicinity of the switch-back there were buildings, including a band-stand, but whether the switch-back was under a roof, or under the same roof with the building in which the band-stand was located, or how far the track or the place where the accident occurred was from the buildings, does not appear.   Carpenters in defendant's employ were at work in these buildings. Plaintiff sought to show that one of the chips from the building had gotten on the rail, and caused the obstruction, and that defendant's employés had been negligent in allowing the chips to get upon the track.   The only testimony to support the claim that the track was obstructed was that of a son of one of the parties injured, who said that he—

"Saw one [chip] that the car had run over.   It was about seven or eight inches long, and lay right down by the side of the track.   I saw the shape of the car-wheel upon it."

It was conceded, as claimed, that the car left the track, and there was testimony tending to show that just before the accident there had been a change made in the track at that point; hence it may have been the then defective condition of the track that caused the accident. The only testimony offered to connect defendant in any way with the presence of the chips at the place of the injury was the presence of the carpenters at the band-stand, and the testimony of the parties who were in the car.

Plaintiff says:

" When I went up to the band-stand, I saw the chips right along by the steps, and where the car went down from the stand. I noticed them about half-way up to the stand from where the car was thrown off. * * * I did not see any obstruction on the track right there at the time I was hurt. I saw them when I got pretty near the band-stand."

Another witness says:

" I did not notice the chips until I was walking up. * * * I noticed there were chips around me. They were on one side where the car was thrown off. It seemed to be on the east side of the track. * * * I did not notice the chips at any other place than where we were."

Two boys, who were on the car, say that they—

" Saw chips on the track where we went off, and from there up to the music stand."

The mere fact that carpenters were at work at the building some distance away, and that some of the chips, although made at the band-stand, were found at the place of the injury, would not establish defendant's negligence. As was suggested by plaintiff's counsel on the argument, the wind may have carried them to that point. But there was uncontradicted testimony that an hour before the accident Hathaway's son was at work on the tracks at the very point where the accident occurred, with an adz, "trimming off the center in between the tracks, so as to let the dog over," and had been at work there before that, repairing the track. Under this

state of facts, there was no testimony that would warrant the jury in finding that the accident was occasioned by reason of the carelessness or negligence of defendant's servants in allowing the track to be obstructed.

It appeared, however, that defendant had published in the local press an article " descriptive of North Park, and the grounds, buildings, and attractions there, and of defendant's railway as a means of going to North Park, and stated, among other things, that a switch-back railway was being built on defendant's grounds;" and plaintiff insists that defendant must be considered as inviting plaintiff to visit the resort, and to avail herself of the attractions, including the switch-back; and, having invited her upon its premises, it was under obligations to be reasonably sure that it was not inviting plaintiff into danger.

A roller-coaster is not a snare or an explosive. It is, in and of itself, notice of its character and purpose. Its presence and operation involve no danger to those who keep away from it, nor does its enjoyment necessarily involve injury. It cannot be said that by granting permission to operate a switch-back at North Park defendant was guilty of negligence, nor that it was defendant's duty to guard it, or exclude the public from its use. It is not unusual at places of resort to lease to others certain privileges, viz., to operate swings, or merry-go-rounds, or roller-coasters, or to sell refreshments. The proprietors of the resort do not thereby become insurers against accidents to persons patronizing the lessee, or become liable for his carelessness. It is not uncommon for street railways, steamboats, and railroads to advertise attractions on their routes. They do not thereby become insurers of the persons while in attendance upon the attraction, or responsible for the carelessness of the operators.

Plaintiff relies upon the case of *Conradt v. Clauve*, 93 Ind. 476, but from an examination of that case the distinc-

tion is apparent.  Defendants were managers of a public fair, and had allotted a portion of the grounds for practice in shooting with a target gun,—a deadly weapon; but they had omitted to take or see that such reasonable precautions were taken as would shield (not the target shooters) the public from danger, and would notify them that the place was dangerous.  Plaintiff paid the admission fee to the grounds, and while therein, *being utterly ignorant of the location and existence of the gun*, or that said portion of the ground was reserved for target practice, hitched his horse within the portion of ground so allotted and so negligently left open, and the horse was shot and killed. In the present case it is the participant, who had full notice and knowledge of the use to which the particular portion of the premises was devoted, who complains.

The learned judge was right in directing a verdict for defendant, and the judgment is affirmed.

LONG, GRANT, and MONTGOMERY, JJ., concurred. DURAND, J., did not sit.