## KENDZOREK v GUARDIAN ANGEL CATHOLIC PARISH

Docket No. 105759. Submitted May 11, 1989, at Detroit. Decided July 18, 1989. Leave to appeal applied for.

Lynn Kendzorek, a minor, sustained injury on premises owned by the Guardian Angel Catholic Parish while on a carnival ride owned and operated by Thomas Gilders and Ronald Pierce, doing business as Kiddie Time, Inc. The carnival ride was part of an annual fund-raising festivity open to the public and conducted by the Guardian Angel Catholic Parish. D'Anna Kendzorek, individually and as next friend of Lynn Kendzorek, brought an action for damages in Wayne Circuit Court alleging negligence by Guardian Angel Catholic Parish, Gilders and Pierce. The trial court, John H. Gillis, Jr., J., granted summary disposition in favor of Guardian Angel Catholic Parish, ruling that the ride was not owned, operated, maintained or repaired by defendant church and that, therefore, defendant church owed no duty to the injured child. Plaintiff appealed.

The Court of Appeals *held:*

A possessor of land who holds it open to the public for any purpose is subject to liability to members of the public entering for that purpose for physical harm caused to them by his failure to exercise reasonable care to protect them against unreasonably dangerous activities of, or unreasonably dangerous conditions created by, an independent contractor or concessionaire employed or permitted to do work or carry on an activity on the land.

Reversed.

NEGLIGENCE — PREMISES LIABILITY — INDEPENDENT CONTRACTORS — CONCESSIONAIRES.

A possessor of land who holds it open to the public for any purpose is subject to liability to members of the pubic entering for that purpose for physical harm caused to them by his failure to exercise reasonable care to protect them against

REFERENCES

Am Jur 2d, Amusements and Exhibitions §§ 64, 88 *et seq.*

Liability of owner, lessee, or operator for injury or death on or near loop-o-plane, ferris wheel, miniature car, or similar rides. 86 ALR2d 350.

unreasonably dangerous activities of, or unreasonably danger-
ous conditions created by, an independent contractor or conces-
sionaire employed or permitted to do work or carry on an
activity on the land; this duty of care owed by the possessor of
land to his invitees cannot be delegated to another.

*Goldschmid & Kosma, P.C.* (by *Robert M.
Goldschmid*), for plaintiff.

*Bodman, Longley & Dahling* (by *Joseph A. Sulli-
van, Kim Lavalle* and *Gary D. Reeves*), for Guard-
ian Angel Catholic Parish.

Before: HOOD, P.J., and BEASLEY and SHEPHERD,
JJ.

PER CURIAM. Plaintiff, D'Anna Kendzorek, indi-
vidually and as next friend of Lynn Kendzorek, a
minor, appeals as of right from an order granting
summary disposition in favor of defendant, Guard-
ian Angel Catholic Parish.

This case arose out of an injury to Lynn Kendzo-
rek on October 1, 1983, when she was attempting
to ride a carnival machine named "The Swing" on
the premises of the Guardian Angel Parochial
School in Detroit. The occasion was the annual
"Applefest" fund-raiser of defendant church. Also
named as defendants were the owners-operators of
the ride, Thomas Gilders and Ronald Pierce, doing
business as Kiddie Time, Inc., and Ronald Pierce,
individually.

The Swing is described as a metal cage with a
wood floor in which riders stand upright, holding
onto metal bars and using the weight of their
bodies to make the cage swing in a full circle.
Lynn Kendzorek fell when she slipped in water on
the floor and the bars rotated and turned in her
hands. Plaintiff claimed defendants had a duty to
maintain the ride and keep it in reasonably safe

repair, and that defendants breached their duty by failing to maintain, repair and warn so as to cause injury to Lynn Kendzorek.

Defendant church moved for summary disposition under MCR 2.116(C)(10), claiming the ride was neither owned, operated, maintained nor repaired by the church and that, therefore, defendant church owed no duty to the injured child. The trial court granted the motion, relying on *Knottnerus v The North Park Street Railway Co.*[1]

On appeal, we start our analysis with recognition of the following general propositions upon which plaintiff's case rests. Defendant church owns and possesses the land and premises upon which Applefest, its annual fund-raiser, was held. At the time and place, the injured child was a public invitee of defendant church on the school premises where The Swing was located. The purpose of Applefest was to raise money for defendant church. The purpose of the carnival rides was to attract people to come and spend money for the benefit of defendant church. In this setting, we believe defendant church owed the child a duty to exercise reasonable care for her protection and safety.[2]

Defendant church has not looked upon this case as a premises liability case. It says the child's injuries occurred while she was *inside* a carnival ride. Defendant church also says it did not own, operate, assemble, repair or maintain the ride in question. For purposes of reviewing the grant of summary disposition to defendant, we view this case as being controlled by premises liability law.[3] Whether the child's injuries occurred "inside" or

[1] 93 Mich 348; 53 NW 529 (1892).

[2] *Bauer v Saginaw Co Agricultural Society,* 349 Mich 616; 84 NW2d 827 (1957).

[3] E.g., see Chapter 19, "Premises Liability", SJI2d 19.01 - 19.11.

outside or upon or around the carnival ride is irrelevant. What is relevant is that defendant church owned and occupied the premises upon which the carnival rides were located and acted in the role of invitor. If defendant church, as owner and occupier of the premises, owes a duty to the child, it may not delegate that responsibility to another to avoid liability.

Both defendant church and the trial court rested the grant of summary disposition on *Knottnerus, supra,* which was decided in 1892. In *Knottnerus,* the defendant owned and operated a street railway in Grand Rapids which extended from the center of the city to a pleasure resort known as North Park, which was also owned by the defendant. Within the resort was a roller coaster or switchback owned and operated by a third party. The plaintiff had taken one of defendant's cars to North Park and, while riding upon the roller coaster, was injured in a derailment. The plaintiff claimed that the defendant's employee-carpenters, who were working on a nearby building, had negligently allowed a wood chip to get on the track, which caused the roller coaster to derail. The trial court directed a verdict for the defendant, apparently believing there was insufficient evidence to establish negligence of the carpenters in causing wood chips to be left on the rails. The Supreme Court affirmed, going to some lengths in an attempt to establish that a roller coaster was not a dangerous instrumentality. This effort was later denigrated in *Bauer v Saginaw Co Agricultural Society,*[4] where the Supreme Court said:

> [*Knottnerus*] involved the derailing of a roller coaster, which the Court sought (we think not too successfully) to distinguish from the rule previ-

---

[4] *Bauer, supra* at 627.

ously cited by holding it not a dangerous instrumentality.

We do not think *Knottnerus* controls here. Although the Court in *Knottnerus* affirmed a directed verdict in the defendant's favor, we do not believe it is clear on what grounds affirmance was based. In the opinion, the Supreme Court first referred to the plaintiff's claim that defendant was negligent in allowing large wooden chips to get on the track. Finding no evidence that any chips caused the accident, the Court then focused on so-called uncontradicted evidence that the son of the (third party) roller coaster owner had worked on the tracks at the derailment point only an hour before the accident. The Court also rejected the argument that, as an invitor, the defendant owed plaintiff a duty of reasonable care regarding the roller coaster for a litany of reasons which included: that the roller coaster was not a snare or explosive; that, where the privilege to operate a ride or concession is leased to others, the defendant is not liable for the lessee's negligence; and that advertising of attractions on the route of the defendant's railway does not make him responsible for the carelessness of the operator of the attraction. To the extent that the decision in *Knottnerus* is read to dictate that the within defendant church did not owe the injured child a duty of reasonable care because the ride was owned and operated by another, we believe it is inconsistent with current premises liability law.

Although *Bauer, supra,* involved the use of firearms in the immediate vicinity of other people, which had been held to require a very high degree of care, it was not this fact that created a duty on the part of the defendant. The defendant agricultural society held and advertised an annual fair on

its own property, leased space for a shooting gallery to a concessionaire (Smith) and, except for inspecting the erected gallery, the defendant left control of the rented space to Smith. The direct cause of the plaintiff's injury was the negligence of Smith's employee. Although the Supreme Court noted that the defendant had the power and opportunity to control and regulate its concessionaires, it concluded that analysis of whether Smith was an independent contractor was irrelevant because when the defendant possessor of the land invited the plaintiff onto the premises for the fair it became bound to use reasonable care to see that all parts of the fair were conducted safely regardless of whether they were managed by the owner or by independent contractors or lessees.[5]

The Restatement section quoted in *Bauer* has been revised and now states:

> A possessor of land who holds it open to the public for any purpose is subject to liability to members of the public entering for that purpose for physical harm caused to them by his failure to exercise reasonable care to protect them against unreasonably dangerous activities of, or unreasonably dangerous conditions created by, an independent contractor or concessionaire employed or permitted to do work or carry on an activity on the land.[6]

One of the comments to that section provides:

> [One] situation to which the rule stated in this Section frequently applies is one in which the possessor of land, generally one operating an amusement park or a fairground, employs independent contractors to provide entertainment, or

---

[5] *Id.* at 624-627; Restatement, Torts, § 415.

[6] 2 Restatement Torts, 2d, § 415, p 390.

grants concessions to persons who make a business of doing so, or of providing food and other conveniences. Where such a concession is operated upon land retained in the possession or control of the possessor, he has a duty to exercise reasonable care to see that the equipment, methods and activities of the concessionaire involve no unreasonable risk of physical harm to those whom he invites to enter.[7]

The injured child was a business invitee of defendant church, since the land was held open to the public for entry for its fund-raising purpose (Applefest) and the child entered the premises in connection with that purpose.[8] The general rule that a defendant is subject to liability for harm to his business invitees caused by his failure to take reasonable care with regard to the acts of third persons is meant to apply to independent contractors and concessionaires such that the invitor must exercise reasonable care for the protection of the business invitee by supervising the activity of a contractor or concessionaire, including the installation and operation of their instrumentalities.

In the within case, plaintiff argues that a material question of fact remains as to whether defendant church retained the right to control the activity of the carnival operator. But, even assuming as defendant argues that it did not retain control, the duty of reasonable care owed by an invitor to his business invitee cannot be delegated.[9] This duty of reasonable care is owed to an invitee by both the business invitor *and* the possessor of the premises.[10] Although possessory rights can be

---

[7] 2 Restatement Torts, 2d, § 415, Comment b, p 391.

[8] 2 Restatement Torts, 2d, § 332, Comment a.

[9] See Prosser, Torts, 4th ed, Invitees, § 61, p 395; SJI2d 19.10.

[10] *Merritt v Nickelson,* 407 Mich 544, 551; 287 NW2d 178 (1980), citing *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 408; 97 NW2d 90 (1959).

"loaned" to another, thereby conferring a duty to make the premises safe, the *invitor* cannot entirely absolve himself of his obligations by doing so.[11]

Finally, there are cases which hold generally that premises owners are not subject to liability for the conditions of the premises where they do not have control over the premises. But control is only an issue where the owner is neither the possessor nor the invitor; e.g., a nonpossessory cotenant[12] or a landlord.[13]

Therefore, defendant church owed a duty to take reasonable care for the safety of its invitee, Lynn Kendzorek. While duty is a question of law, whether defendant's conduct falls below the general standard of care (including whether the risk of harm is reasonable) is, in this case, a question for the jury.

The trial court's order granting summary disposition in favor of defendant church is reversed.

Reversed.

---

[11] See SJI2d 19.10. If defendant church had conferred a duty of reasonable care regarding the carnival ride to the other defendants through the contract, and one of them breached that agreement, then defendant church may be entitled to indemnification from that defendant. See *Quinlivan v Great Atlantic & Pacific Tea Co, Inc,* 395 Mich 244, 267-270; 235 NW2d 732 (1975).

[12] *Merritt, supra;* see also *Wheeler v Iron Co Rd Comm,* 173 Mich App 542; 434 NW2d 188 (1988) (no duty on the part of nonpossessory title holder).

[13] *Lipsitz v Schechter,* 377 Mich 685; 142 NW2d 1 (1966); *Perry v Hazel Park Harness Raceway,* 123 Mich App 542, 550; 332 NW2d 601 (1983).