STITT v HOLLAND ABUNDANT LIFE FELLOWSHIP

Docket No. 112217. Argued January 13, 2000 (Calendar No. 1). Decided
    July 18, 2000. Amended September 19, 2000.

Jill Stitt, as personal representative of the estate of Violet J. Moeller,
    deceased, and Gilbert E. Moeller, brought a premises liability
    action in the Ottawa Circuit Court against Holland Abundant Life
    Fellowship for injuries suffered by Ms. Moeller when she tripped
    and fell in the church's parking lot. On pretrial motions, the court,
    Edward R. Post, J., determined that the plaintiff was a licensee, and
    at trial the court instructed the jury only regarding the duties owed
    by the defendant to a licensee, refusing to instruct on the higher
    duty owed to invitees. Judgment was entered on a jury verdict for
    the defendant. The Court of Appeals, HOEKSTRA, P.J., and GRIFFIN
    and BANDSTRA, JJ., reversed and remanded for a new trial, holding
    that the trial court erred in finding that the plaintiff had only licen-
    see, rather than invitee, status. 229 Mich App 504 (1998) (Docket
    No. 192208). The church appeals.

    In an opinion by Justice YOUNG, joined by Chief Justice WEAVER,
    and Justices TAYLOR, CORRIGAN, and MARKMAN, the Supreme Court
    *held*:

    Persons on church premises for other than commercial purposes
    are licensees and not invitees.

    1. A landowner's duty to a visitor depends on that visitor's sta-
    tus. Michigan has recognized three common-law categories for per-
    sons who enter upon the land or premises of another: trespasser,
    licensee, or invitee. A trespasser is a person who enters upon
    another's land, without the landowner's consent. The landowner
    owes no duty to the trespasser except to refrain from injuring him
    by wilful and wanton misconduct. A licensee is a person who is
    privileged to enter the land of another by virtue of the possessor's
    consent. A landowner owes a licensee a duty only to warn the
    licensee of any hidden dangers the owner knows or has reason to
    know of, if the licensee does not know or have reason to know of
    the dangers involved. The landowner owes no duty of inspection or
    affirmative care to make the premises safe for the licensee's visit.
    An invitee is a person who enters upon the land of another upon an
    invitation that carries with it an implied representation, assurance,

or understanding that reasonable care has been used to prepare the premises, and make it safe for his reception. The landowner has a duty of care, not only to warn an invitee of any known dangers, but to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. Thus, an invitee is entitled to the highest level of protection under premises liability law.

2. An owner's reason for inviting persons onto a premises is the primary consideration when determining a visitor's status. In order to establish invitee status, a plaintiff must show that the premises were held open for a commercial purpose. Church visitors who are attending church for religious worship are more like social guests (licensees) than business visitors (invitees). In this case, the trial court correctly instructed the jury that persons on church property for noncommercial purposes are licensees and not invitees.

Reversed and remanded.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that the Supreme Court has never held that invitee status arises solely where there is a commercial purpose for visiting the owner's premises. Instead, it has long recognized and applied both the commercial-purpose and the public-invitee provisions of 2 Restatement Torts, 2d, § 332 to classify visitors as invitees. The majority's reliance on *McNulty v Hurley*, 97 So 2d 185 (Fla, 1957), to identify visitors as invitees only when they are visiting for a commercial purpose is misplaced, and rejects a recognized principle of Michigan law.

The public invitee provision of § 332 accurately reflects the common law of Michigan, as adopted by the Court in *Preston v Sleziak*, 383 Mich 442 (1970), and should be applied in this case. Furthermore, it reflects the sound public policy of protecting the public when premises are open to them. For over a century, Michigan has recognized that a person can be classified as an invitee when on an invitor's property for a commercial purpose or pursuant to an invitation. Thus, *McNulty* runs contrary to recognized principles of Michigan law by imposing a commercial purpose requirement on the designation of an invitee. The Supreme Court has expressly stated that invitation is sufficient; pecuniary profit to the owner is not essential, and the principle is contained in the public invitee provision of § 332.

*Giddy & Associates* (by *Ronald J. Giddy*) for the plaintiffs-appellees.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather*) for the defendant-appellant.

YOUNG, J. In this premises liability case the plaintiff, Violet Moeller, was injured when she tripped over a concrete tire stop in defendant church's parking lot.[1] Plaintiff was visiting the church to attend bible study. Plaintiff sued the church, alleging that the defendant negligently placed the tire stops and failed to provide adequate lighting in the parking lot.

At trial, the jury was instructed on the obligations property owners owe to licensees. The jury returned a verdict in favor of the church. The Court of Appeals reversed and remanded the case for a new trial after determining that the trial court erred by instructing the jury on the obligations owed to licensees rather than "public invitees" as defined in 2 Restatement Torts, 2d, § 332, p 176.[2]

We granted leave in this case to determine the proper standard of care owed to individuals on church property for noncommercial purposes. We hold that the trial court correctly instructed the jury that such individuals are licensees and not invitees. Accordingly, we reverse the Court of Appeals deci-

---

[1] Violet Moeller is now deceased. Jill Stitt, decedent's personal representative has been substituted as the named plaintiff. For purposes of this opinion, Ms. Moeller will be referred to as the plaintiff.

[2] Section 332 of the Restatement provides:

> (1) An invitee is either a public invitee or a business visitor.

> (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

> (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

sion and reinstate the trial court judgment in favor of the church.

I

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of November 22, 1989, Violet Moeller accompanied her friend Pat Drake to defendant's church to attend bible study. Ms. Moeller was not a member of the church. Ms. Drake parked her car in the church parking lot. As she exited Ms. Drake's car, plaintiff tripped and fell over a tire stop, fracturing her left arm. Plaintiff subsequently sued the defendant church, asserting that defendant negligently placed the concrete tire stops and failed to provide adequate lighting in the parking lot.

Before trial, the church twice filed motions for summary disposition. The trial court denied both motions, but determined that Ms. Moeller was a licensee and not an invitee at the time of the accident. The case proceeded to trial, at which time the judge instructed the jury on the duties owed to licensees.[3] At the close of trial, the jury returned a verdict in favor of the defendant. The court subsequently entered a judgment of no cause on the verdict.

---

[3] The trial court gave the following instructions:

> The possessor of land or premises is liable for physical harm caused to the licensee by a condition on the premises if, but only if, (A) the possessor knew or should've known of the condition, and should have realized that it involved an unreasonable risk of harm to the licensee, and should have expected that she would not discover or realize the danger and (B) the possessor failed to exercise reasonable care to make the conditions safe or to warn the licensee of the condition and the risk involved, and (C) the licensee did not know or have reason to know of the condition and risk involved.

Plaintiff appealed, contending that the trial court erred in determining that she was a licensee at the time of her accident. The Court of Appeals held that the plaintiff was a "public invitee" as defined in 2 Restatement Torts, 2d, § 332, and not a licensee.[4] The Court of Appeals acknowledged that this Court has never explicitly adopted the Restatement provision. However, on the basis of its reading of *Preston v Sleziak*, 383 Mich 442; 175 NW2d 759 (1970), the Court of Appeals concluded that this provision applies in Michigan and that the trial court improperly instructed the jury. Accordingly, the Court of Appeals reversed the trial court judgment and remanded the case for a new trial. We granted defendant's application for leave to appeal. 461 Mich 861 (1999).

II

STANDARD OF REVIEW

As a general rule, if there is evidence from which invitee status might be inferred, it is a question for the jury. See *Nezworski v Mazanec*, 301 Mich 43, 58; 2 NW2d 912 (1942). However, this case presents the broader question whether invitee status should be extended to an individual who enters upon church property for a noncommercial purpose. This is a question of law that we review de novo. See *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

---

[4] 229 Mich App 504; 582 NW2d 849 (1998).

III

ANALYSIS

A. THE COMMON-LAW CLASSIFICATIONS

Historically, Michigan has recognized three common-law categories for persons who enter upon the land or premises of another: (1) trespasser, (2) licensee, or (3) invitee. *Wymer v Holmes*, 429 Mich 66, 71, n 1; 412 NW2d 213 (1987). Michigan has not abandoned these common-law classifications. *Reetz v Tipit, Inc*, 151 Mich App 150, 153; 390 NW2d 653 (1986). Each of these categories corresponds to a different standard of care that is owed to those injured on the owner's premises. Thus, a landowner's duty to a visitor depends on that visitor's status. *Wymer, supra* at 71, n 1.

A "trespasser" is a person who enters upon another's land, without the landowner's consent. The landowner owes no duty to the trespasser except to refrain from injuring him by "wilful and wanton" misconduct. *Id.*

A "licensee" is a person who is privileged to enter the land of another by virtue of the possessor's consent. *Id.* A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit. *Id.* Typically, social guests are licensees who assume the ordinary risks associated with their visit. *Preston, supra* at 451.

The final category is invitees. An "invitee" is "a person who enters upon the land of another upon an

invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception." *Wymer, supra* at 71, n 1. The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. *Id.* Thus, an invitee is entitled to the highest level of protection under premises liability law. *Quinlivan v Great Atlantic & Pacific Tea Co, Inc,* 395 Mich 244, 256; 235 NW2d 732 (1975).

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if the owner: (a) knows of, or by the exercise of reasonable care would discover, the condition and should realize that the condition involves an unreasonable risk of harm to such invitees; (b) should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect invitees against the danger. *Id.* at 258, citing Restatement, § 343.

The Court of Appeals correctly recognized that invitee status is commonly afforded to persons entering upon the property of another for business purposes. See, e.g., *Nezworski, supra*; *Pelton v Schmidt,* 104 Mich 345; 62 NW 552 (1895). In this case, we are called upon to determine whether invitee status should extend to individuals entering upon church property for *non*commercial purposes. Because invitee status necessarily turns on the existence of an

"invitation," we must examine our common law in order to ascertain the meaning of that term.

### B. THE MEANING OF INVITATION IN MICHIGAN'S COMMON LAW

Unfortunately, our prior decisions have proven to be less than clear in defining the precise circumstances under which a sufficient invitation has been extended to a visitor to confer "invitee" status. On the one hand, several of our decisions appear to support the requirement that the landowner's premises be held open for a commercial business purpose. See, e.g., *Perl v Cohodas, Peterson, Paoli, Nast Co*, 295 Mich 325; 294 NW 697 (1940); *Diefenbach v Great Atlantic & Pacific Tea Co*, 280 Mich 507; 273 NW 783 (1937);[5] *Sink v Grand Trunk W R Co*, 227 Mich 21; 198 NW 238 (1924). Indeed, several panels of our Court of Appeals have interpreted our decisions as supporting the requirement of a business purpose. See, e.g., *Butler v Ramco-Gershenson, Inc*, 214 Mich App 521; 542 NW2d 912 (1995); *Bradford v Feeback*, 149 Mich App 67; 385 NW2d 729 (1986); *Leep v McComber*, 118 Mich App 653; 325 NW2d 531 (1982).[6] The "commercial purpose" distinction is sufficiently

---

[5] For example, in *Diefenbach*, the plaintiff was injured when he entered the defendant's store. He alleged he entered the store for the purpose of purchasing groceries and denied defendant's contentions that he entered the store to participate in a rat hunt that was going on at the time. The Court noted that, although plaintiff actually bought no groceries, if he came to the store for a business purpose he would undoubtedly be an invitee.

[6] In *Butler*, the Court of Appeals defined invitees as persons who enter the premises at the owner's express or implied invitation to conduct business concerning the owner. Correlatively, in *Bradford*, the Court of Appeals defined licensee as a person who, other than for a business purpose, enters another's land with the express or implied permission of the owner or person in control of the property.

recognized in Michigan case law that there are even secondary authorities that include Michigan among those jurisdictions conferring invitee status only on business visitors. See, e.g., 95 ALR2d 992, § 4, p 1014.

In contrast with the line of cases supporting a commercial purpose requirement, some of our earlier decisions are replete with broad language suggestive of the Restatement's "public invitee" definition, although the precise contours of the definition are difficult to discern. See, e.g., *Polston v S S Kresge Co*, 324 Mich 575; 37 NW2d 638 (1949);[7] *Sheldon v Flint & P M R Co*, 59 Mich 172; 26 NW 507 (1886); *Hargreaves v Deacon*, 25 Mich 1 (1872).[8]

Finally, there is *Preston, supra* which is internally inconsistent on this point. *Preston* was interpreted by the Court of Appeals as having implicitly adopted the Restatement definition of "public invitee." At the same time, *Preston, supra* at 448, quoting Cooley on

---

[7] In *Polston*, this Court held that members of the public who use a sidewalk with the defendant's knowledge, permission, and acquiescence were not trespassers but licensees. The *Polston* Court provided that the rule for licensees is different when the licensee is using a path that has been openly and notoriously held out to the public for use. In such cases, the Court held that the defendant owed a greater duty of ordinary care.

We note that *Polston* and other cases decided about that time seem to impose a special heightened duty for persons injured on sidewalks, bridges, and roadways held open to the public. Hence, where such persons would ordinarily be considered licensees, they were nonetheless entitled to a duty of ordinary care. See, e.g., *Brown v Michigan R Co*, 202 Mich 280; 168 NW 419 (1918); *Morrison v Carpenter*, 179 Mich 207; 146 NW 106 (1914).

[8] In *Hargreaves*, this Court stated that a landowner owes a duty of care when an injured party has been induced to come by personal invitation or employment or by resorting there as a place of business or "of general resort held open" to customers or others whose lawful occasion may lead them to come visit. *Id.* at 5. Interestingly, *Hargreaves* is cited in 95 ALR2d 992, § 4, p 1014 as supporting a commercial purpose requirement.

Torts, appears to recognize the commercial purpose requirement associated with invitee status:

> An invitation may be inferred when there is a common interest or mutual advantage, a license when the object is the mere pleasure or benefit of the person using it. *"To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business with which the occupant of the premises is engaged, or which he permits to be carried on there.* There must be some mutuality of interest in the subject to which the visitor's business relates, although the particular business which is the object of the visit may not be for the benefit of the occupant.
>
> "The distinction between a visitor who is a mere licensee and one who is on the premises by invitation turns largely on the nature of the business that brings him there, rather than on the words or acts of the owner which precede his coming. . . ." [3 Cooley, Torts (4th ed), § 440, pp 193-194 (emphasis added).][9]

Cooley's acknowledgment that an invitee's status is dependent upon a visit associated with a "commercial purpose" and "mutuality of interest" concerning the reason for the visit demonstrate the extent to which Michigan has historically, if not uniformly, recognized a commercial business purpose as a precondition for establishing invitee status.

Despite the divergence of our cases concerning the elements necessary to confer invitee status, one thing *has* been consistent: to our knowledge, this Court has never squarely addressed the question whether a

---

[9] Given that *Preston* is purported to have adopted the Restatement *"public invitee"* definition, which does not require a business purpose, we find it difficult to reconcile *Preston's* citation to Cooley, which expressly requires a business purpose, as an accurate statement of Michigan law. *Id.* at 448, 450.

mere "public invitee" such as a churchgoer is entitled
to invitee status. While plaintiff suggests that our
cases have already recognized invitee liability for
churches, a careful review of these cases shows that
this is a less than accurate analysis. To the contrary,
Michigan cases that have conferred invitee status
upon an individual injured on church premises
reveals that each has involved a plaintiff who was on
the church premises for a *commercial* business pur-
pose. For example, in *Bruce v Central Methodist
Episcopal Church*, 147 Mich 230; 110 NW 951 (1907),
the plaintiff was allowed to recover from the defend-
ant church for injuries he sustained while painting the
church building. The plaintiff was working for a con-
tractor, painting the ceiling of the church when the
scaffolding on which he was standing broke.

Almost fifty years later, a defendant church was
held liable in *Manning v Bishop of Marquette*, 345
Mich 130; 76 NW2d 75 (1956). In *Manning*, the plain-
tiff fell and was injured on church property as she
was leaving a bingo game. The defendant argued that
the plaintiff's claim was barred because she was at
the church for an illegal purpose and should not use
her illegal conduct as a foundation for her claim that
she was on the premises as an invitee. *Id.* at 137. The
Court refused to entertain any defenses based on ille-
gality or charitable immunity and held that the plain-
tiff was an invitee.

Later, in *Kendzorek v Guardian Angel Catholic
Parish*, 178 Mich App 562; 444 NW2d 213 (1989),
overruled on other grounds in *Orel v Uni-Rak Sales
Co*, 454 Mich 564; 563 NW2d 241 (1997), a child was
injured on a swing at a carnival held on the church
grounds. The carnival was a church fund-raiser. The

child's mother brought suit against the church. The Court of Appeals held that, at the time the child was injured, she was an invitee.

As these cases illustrate, invitee status has traditionally been conferred in our cases only on persons injured on church premises who were there for a commercial purpose.

### C. THE RESTATEMENT

We begin by noting that a large number of jurisdictions have adopted § 332 of the Restatement:

> (1) An invitee is either a public invitee or a business visitor.
>
> (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
>
> (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

Subsection (2) of § 332 of the Restatement creates an invitee status that does not depend on a commercial purpose. In this case, the Court of Appeals interpreted *Preston, supra,* as having implicitly adopted the Restatement definition of "public invitee." We certainly agree that *Preston* relied on § 332 of the Restatement. However, the issue whether to adopt the Restatement definition of "public invitee" was not before this Court in *Preston.*

In *Preston,* the plaintiffs were social guests who had been invited to the defendant's cottage for the weekend. In order to access the cottage, the plaintiffs entered a lift. The lift consisted of a car that was controlled by cable and an electric winch. After the plain-

tiffs entered the lift, a shaft broke and the car crashed, injuring the plaintiffs. *Id.* at 445. The plaintiffs filed suit against the defendants. The jury returned a verdict in favor of the defendants. The Court of Appeals erroneously determined that the plaintiffs were invitees merely because they had been "invited" onto the premises. That Court reversed and remanded the case for a new trial. *Id.* This Court held that the Court of Appeals committed error requiring reversal because the trial judge properly instructed the jury on the duty owed by a host to his social guests, licensees. *Id.* at 454. As stated by the trial judge, a host has no duty to reconstruct his premises or make his home more convenient or more safe for those accepting his hospitality. The guest assumes the ordinary risks that come with the premises. *Id.* at 446.

There was no contention in *Preston* that the plaintiffs were "public invitees," because that case involved only the duty owed to social guests. Thus, the issue whether to adopt the Restatement definition of "public invitee" was not before this Court in *Preston* and there is room for doubt regarding whether *Preston* can properly be regarded as binding precedent on this point. However, to the extent *Preston* purported to adopt the Restatement definition, and this could be properly considered a binding holding, we overrule *Preston*. Moreover, as explained below, we decline to adopt § 332 of the Restatement here.

### D. BUSINESS PURPOSE AS A PRECONDITION OF INVITEE STATUS

Given the divergence of our cases on what circumstances create invitee status, we must provide some form of reconciliation in this case. In harmonizing our

cases, we conclude that the imposition of additional expense and effort by the landowner, requiring the landowner to inspect the premises and make them safe for visitors, must be directly tied to the owner's commercial business interests. It is the owner's desire to foster a commercial advantage by inviting persons to visit the premises that justifies imposition of a higher duty. In short, we conclude that the prospect of pecuniary gain is a sort of quid pro quo for the higher duty of care owed to invitees. Thus, we hold that the owner's reason for inviting persons onto the premises is the primary consideration when determining the visitor's status: In order to establish invitee status, a plaintiff must show that the premises were held open for a *commercial* purpose.

With regard to church visitors, we agree with the court in *McNulty v Hurley*, 97 So 2d 185 (Fla, 1957), that such persons are licensees.[10] In *McNulty*, a churchgoer was injured when, as she was leaving the church, she was pushed to the ground by a crowd of people. The lower court granted the defendant church's motion to dismiss on grounds that the plaintiff failed to state a cause of action. The defendant contended that one entering church premises for the purpose of attending religious services is a mere licensee. Thus, the only duty of the church was to refrain from wanton negligence or wilful misconduct and to refrain from intentionally exposing her to danger. *Id.* at 187. The plaintiff, on the other hand, argued that she was on the church premises by invitation and

---

[10] The Florida Supreme Court has since moved away from *McNulty* and has adopted § 332 of the Restatement. See *Post v Lunney*, 261 So 2d 146 (Fla, 1972). However, we continue to find *McNulty*'s reasoning persuasive.

that most religions urge members and others to enter their churches and hold their doors open as a standing invitation. *Id.* The Florida Supreme Court disagreed, stating:

> [A]n invitation to enter and worship, whether it be either express or implied, does not constitute one who accepts the invitation an invitee in the legal sense. In order for such relationship to arise the person entering onto the premises, i.e. the invitee, must have done so for purposes which would have benefited the owner or occupant of the premises, i.e. the invitor, or have been of mutual benefit to the invitee and the invitor. And as we view it this benefit must be of a material or commercial rather than of a spiritual, religious, or social nature. [*Id.* at 188.]

Thus, as we do, the *McNulty* court considered a business purpose or a business or commercial benefit to the landowner as a necessary requirement in order for a visitor to be deemed an invitee. The *McNulty* court rejected the argument that church members confer a benefit to the church by supporting the church, stating:

> It cannot be successfully or logically argued that a person enters a place of worship, call it by any name, and participates in worship and prayer to the God or Supreme Being of his choice for the benefit of the body or organization which owns the church, the religious or lay readers who conduct the services, or the God or Supreme Being whom he worships and asks for guidance, help or forgiveness. One of the concepts of all religious beliefs known to us is that participation in religious activities is for the benefit of the mortals who participate therein. [*Id.*]

The *McNulty* court also addressed the issue whether financial contributions at a religious service provided a sufficient basis for invitee status. We find

this analysis instructive because the plaintiff in the case at bar similarly alleges that on prior visits to the church she made financial contributions to the church to such an extent that she should be considered an invitee. The *McNulty* court stated:

> Nor would it matter if the plaintiff had alleged that she made a contribution when the collection plate was passed, for this would not have changed her status. . . . It seems clear to us . . . that one who attends a religious edifice for the purpose of attending a religious service, as did the plaintiff in this case, does so "for his own convenience, pleasure or benefit" and is at best a licensee. [*Id.* at 188-189.]

We agree that whether the plaintiff in the instant case previously gave an offering to the church has no bearing on whether she was a licensee or an invitee. Absent a showing that the church's invitation to attend its services was for an essential commercial purpose, Ms. Moeller should be considered a licensee and not an invitee. A person who attends church as a guest enjoys the "unrecompensed hospitality" provided by the church in the same way that a person entering the home of a friend would. *Hambright v First Baptist Church*, 638 So 2d 865, 868 (Ala, 1994). We conclude that church visitors who are attending church for religious worship are more like social guests (licensees) than business visitors (invitees).[11]

---

[11] The solicitation of entirely voluntary donations by a nonprofit organization is plainly not a commercial activity. Accordingly, a church providing an opportunity for voluntary donations during a religious service that are in no way required to attend the service, i.e., passing a collection plate, does not transform one who attends the church service and elects to make a donation from a licensee into an invitee. Indeed, we imagine that many religious individuals would find it offensive to have their voluntary donations to a church regarded as part of a business or commercial

IV

CONCLUSION

We recognize that a majority of jurisdictions considering the issue have adopted the public invitee definition set forth in § 332 of the Restatement. However, in exercising our common-law authority, our role is not simply to "count heads" but to determine which common-law rules best serve the interests of Michigan citizens. We believe that Michigan is better served by recognizing that invitee status must be founded on a commercial purpose for visiting the owner's premises.

For the above stated reasons, we hold that persons on church premises for other than commercial purposes are licensees and not invitees. Accordingly, we reverse the decision of the Court of Appeals. We remand this case to the Court of Appeals for consideration of the other issues raised by plaintiff in her appeal which were not resolved by the Court of Appeals in light of its analysis of the present issue.

WEAVER, C.J., and TAYLOR, CORRIGAN, and MARKMAN, JJ., concurred with YOUNG, J.

KELLY, J. (*dissenting*). I concur with the majority's chronicling of the facts and its statement of the applicable standard of review. I agree, also, with its recitation of the three common-law categories for persons who enter the land or premises of another. However, I dissent from the remainder of the majority's opinion.

---

transaction, rather than as a gift intended to aid in various religious good works.

The issue is whether individuals who enter another's property for noncommercial purposes are invitees for purposes of determining the standard of care a property owner or possessor owes to them. We have never held that invitee status arises solely where there is a commercial purpose for visiting the owner's premises. Instead, we have long recognized and applied both the commercial-purpose provision and the public-invitee provision of 2 Restatement Torts, 2d, § 332 to classify visitors as invitees. The majority's reliance on *McNulty v Hurley*,[1] to identify visitors as invitees only when they are visiting for a commercial purpose is misplaced. The majority's action rejects a recognized principle of Michigan law.

A

The common law and the statutes make up a major portion of the law of Michigan. Const 1963, art 3, § 7.

> "The common law does not consist of definite rules which are absolute, fixed, and immutable like the statute law, but it is a flexible body of principles which are designed to meet, and are susceptible of adaption to, among other things, new institutions, public policies, conditions, usages and practices, and changes in mores, trade, commerce, inventions, and increasing knowledge, as the progress of society may require. So, changing conditions may give rise to new rights under the law . . . ." [*Beech Grove Investment Co v Civil Rights Comm*, 380 Mich 405, 430; 157 NW2d 213 (1968), quoting 15A CJS, Common Law, § 2, pp 43-44.]

"The Restatement is . . . an attempt to categorically recite the content of the common law." *Yoder Co*

---

[1] 97 So 2d 185 (Fla, 1957).

*v Liberty Mut Ins Co*, 92 Mich App 386, 390; 284 NW2d 810 (1979). Section 332 of the Restatement provides:

> (1) An invitee is either a public invitee or a business visitor.
>
> (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
>
> (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

Section 332 of the Restatement is consistent with the common law of Michigan.

Our common law, as it pertains to invitees, has been developing since 1872. In numerous cases, we have recognized or applied a rule that is similar to that contained in subsection 332(2). Long ago, in *Hargreaves v Deacon*,[2] this Court recognized a distinction between the duty owed to a trespasser and to one who enters another's property under an inducement or a lawful right. *Hargreaves, supra* at 9. The distinction required something more than mere permission. *Id.* To be entitled to damages, the visitor had to have been invited by the landowner to be on the property. *Id.* at 7.

Notably, for the landowner to incur liability, the *Hargreaves* Court *did not* require that a person be on a landowner's property solely for a commercial purpose. It stated that a suit for damages can lie when the

---

[2] 25 Mich 1 (1872).

party injured has been induced to come by personal invita-
tion, *or* by employment which brings him there, *or* by
resorting there as to a place of business, *or* of general
resort held out as open to customers or others whose law-
ful occasions may lead them to visit there. [*Id.* at 5 (empha-
sis added).]

Thus, *Hargreaves* formed the basis for recognizing
several means by which a person could become an
invitee. See *Preston v Sleziak*, 383 Mich 442, 450; 175
NW2d 759 (1970); *Polston v S S Kresge Co*, 324 Mich
575, 578; 37 NW2d 638 (1949); *Douglas v Bergland*,
216 Mich 380, 387-388; 185 NW 819 (1921).

Also long ago, in *Sheldon v Flint & P M R Co*,[3] this
Court applied the public invitee doctrine, although it
did not identify it as such. The plaintiff's decedent
was a child induced to enter the defendant's property
by a band playing there. *Id.* at 173. The child had no
particular business with the defendant and was not
on the property for the pecuniary gain of the defend-
ant. *Id.* at 177. While there, he was struck by the
defendant's train and killed. *Id.* at 174.

The Court found that the music was naturally cal-
culated to attract a crowd. The defendant should have
anticipated that and made provisions to avoid the
hazard that resulted in the child's death. *Id.* at 177-
178. It held that a jury question remained whether the
defendant had exercised the degree of care owed the
plaintiff's decedent under the circumstances. *Id.* at
178. Notably, the Court did not merely label the child
a licensee, despite the absence of any pecuniary bene-
fit to the defendant from the decedent's presence on
its property. *Id.* at 177-178. Thus, we can infer that the

---

[3] 59 Mich 172; 26 NW 507 (1886).

Court determined that the decedent could be classified as an invitee on the basis of invitation alone, without a commercial purpose for being on the property.

In 1908, this Court quoted former Justice COOLEY in *Blakeley v White Star Line*[4] to state our common-law definition of an invitee:

> "One is under no obligation to keep his premises in safe condition for the visits of trespassers. On the other hand, when he expressly or by implication invites others to come upon his premises, whether for business *or for any other purpose*, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." [*Blakeley, supra* at 637, quoting Cooley, Torts, p 605 (emphasis added).]

Particularly significant is the fact that Justice COOLEY identified two different means by which one could be classified as an invitee: (1) by a finding that the person was *invited* upon the property for business, *or* (2) by a finding that the person was invited for any other purpose. *Id.*

On the basis of Justice COOLEY's definition of an invitee, the *Blakeley* Court expressly formulated the applicable rule: "Invitation is sufficient. Pecuniary profit to the owner is not essential." *Id.* at 639. Thus, in *Blakeley*, we again recognized that our common law does not require a commercial purpose for one to be an invitee.[5]

---

[4] 154 Mich 635; 118 NW 482 (1908).

[5] The majority completely ignores the *Blakeley* definition of an invitee. It states that there are several cases that "appear" to support a commercial purpose requirement. *Ante* at 598. It recognizes that there are cases that are suggestive of the Restatement's public invitee definition. But, it

Forty-one years later, in *Polston, supra,* this Court continued to recognize that it could assign invitee status on the basis of invitation alone. It derived the following definition of an invitee:

> From *Hargreaves v Deacon,* [*supra*], it appears that damages for accidental injuries sustained on private premises resulting from the negligence of the owner may not be recovered by one on the theory that he is an invitee *"unless the party injured has been induced to come by personal invitation, or* by employment which brings him there, or by resorting there as to a place of business, or of general resort held out as open to customers," et cetera. [*Polston, supra* at 578 (emphasis added).]

Only after the Court concluded that the plaintiff did not fall within the definition of an invitee did it confer licensee status on him. *Id.*

In *Preston, supra,* we find again that the licensee-invitee distinction does not turn on whether the invitor has the expectation of a pecuniary gain from the invitation. *Id.* at 449-450. "[I]n this state the status of an invitee is tested not only by the theory of economic benefit, *but also upon the concept of invitation." Id.* at 450 (emphasis added).

The majority argues that *Preston* is "internally inconsistent on this point." *Ante* at 599. However, a close reading of *Preston* indicates that its analysis is actually consistent with our common-law rule and the Restatement definition of a public invitee.

---

finds that the contours of the definition are difficult to discern. While the contours of the definition to this point may not be a model of clarity, I ask what is difficult to discern regarding the statement in *Blakeley* that "[p]ecuniary profit to the owner is not essential"? *Blakeley, supra* at 639. From that statement, one can scarcely fail to discern that Michigan law does not require a commercial purpose for someone to be classified as an invitee.

In *Preston*, we considered whether social guests invited to another's home were invitees or licensees. The Court of Appeals had relied on *Genesee Merchants Bank & Trust Co v Payne*[6] to hold that Michigan law classifies the social guest as an invitee. *Preston, supra* at 447.

This Court rejected the *Genesee Merchants Bank* decision and reversed the Court of Appeals. 383 Mich 455. In so doing, we stated:

> "An invitation may be inferred when there is a common interest or mutual advantage, a license when the object is the mere pleasure or benefit of the person using it. 'To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business with which the occupant of the premises is engaged, or which he permits to be carried on there. There must be some mutuality of interest in the subject to which the visitor's business relates, although the particular business which is the object of the visit may not be for the benefit of the occupant.'
>
> " 'The distinction between a visitor who is a mere licensee and one who is on the premises by invitation turns largely on the nature of the business that brings him there, rather than on the words or acts of the owner which precede his coming. . . .' " [*Id.* at 448, quoting 3 Cooley, Torts (4th ed), § 440.]

The majority latches onto the quotation from Cooley as proof that Michigan classifies a visitor as an invitee only when there is a commercial purpose for the visit. *Ante* at 600. However, the majority ignores the context of the quotation. The *Preston* Court quoted Cooley to preserve the historical distinction between a social guest and invitee. *Preston,*

---

[6] 6 Mich App 204; 148 NW2d 503 (1967).

*supra* at 448. The quotation was not meant to provide the general rule for assigning invitee status to visitors in all other situations.

Later in its opinion, the Court quoted § 332 of the Restatement as the general definition of an invitee. *Id.* at 450. It stated that the Restatement "definition fairly represents the law of this state pertaining to what constitutes the legal status of an invitee." *Id.* at 451 (citations omitted). The Court then identified that the comment accompanying § 332 states that invitee status under the Restatement definition does not apply to social guests. *Id.* at 450-451. A social guest " 'does not come as a member of the public upon premises held open to the public for that purpose, and he does not enter for a purpose directly or indirectly connected with business dealings with the possessor.' " *Id.* at 451, quoting 2 Restatement Torts, 2d, § 330, comment h. Thus, the Court held that social guests were not invitees and went on to classify them as licensees. *Id.* at 453.

Comparable Michigan appellate cases decided after *Preston* have focused exclusively on the business invitee provision of § 332.[7] They did not consider the public invitee provision of § 332. In each, however, it

---

[7] See *Stanley v Town Square Cooperative*, 203 Mich App 143, 147; 512 NW2d 51 (1993) ("The distinguishing characteristic that fixes the duty depends upon whether the licensee's visit is related to the pecuniary interests of the possessor of the land"); *White v Badalamenti*, 200 Mich App 434, 436; 505 NW2d 8 (1993) ("To be an invitee, plaintiff's presence on defendants' land must have been related to an activity of some tangible benefit to defendants"); *Doran v Combs*, 135 Mich App 492, 496; 354 NW2d 804 (1984) ("An invitee is one who is on the owner's premises for a purpose mutually beneficial to both parties"); *Danaher v Partridge Creek Country Club*, 116 Mich App 305, 312; 323 NW2d 376 (1982) ("[A]n invitee is one who is on the owner's premises for a purpose mutually beneficial to both parties"); *Socha v Passino*, 105 Mich App 445, 447-448; 306 NW2d 316 (1981) ("An individual can be an invitee if the visit may reasonably be

was unnecessary to consider the public invitee provision, because invitee status was established on the basis of an economic benefit to the property owner.[8]

In order to consider further the public invitee provision of § 332, we had to await a case in which liability was premised on the basis of an injured party being a public invitee. See, e.g., *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 611; 374 NW2d 905 (1985). This case presents that basis, and we should not hesitate to apply the public invitee provision to it.

As identified above, the concept that invitee status is determined by either an economic benefit to, or an invitation by, the property owner is well established in our common law. It has been recognized as the law in Michigan since 1970 in *Preston*. See *Leveque v Leveque*, 41 Mich App 127, 129; 199 NW2d 675 (1972); *Sendelbach v Grad*, 246 NW2d 496, 499 (ND, 1976); 62 Am Jur 2d, Premises Liability, § 88, p 442, n 54. In

---

said to confer or anticipate a business, commercial, monetary, or other tangible benefit to the occupant").

[8] See *Stanley*, n 7 *supra* (the guest of a co-op resident was an invitee because the co-op obtained pecuniary gain in exchange for giving the resident the right to license visitors); *White*, n 7 *supra* (the question for the jury to decide is whether an unpaid babysitter who slipped on ice at the defendant's home was an invitee); *Doran*, n 7 *supra* (a former mother-in-law who fell on the defendant's driveway while returning children from the former husband's home was an invitee because of the pecuniary benefit received by the defendant); *Danaher*, n 7 *supra* (the plaintiff was deemed an invitee when he arrived at the defendant's golf course to play golf); *Socha*, n 7 *supra* (the plaintiff was a licensee when injured in the defendant's house while removing a piece of furniture that benefited him, but provided no benefit to the defendant).

This is especially true with regard to the cases cited by the majority in which courts have recognized invitee liability for churches. See *ante* at 601-602. In each case this Court or the Court of Appeals classified the visitor as an invitee because the church received a commercial benefit from the visitor's presence. *Id.* There simply was no need to rely on the concept of invitation and apply the public invitee definition.

fact, I would interpret *Preston* as implicitly adopting the Restatement definition of an invitee.

The majority argues that the issue "whether to adopt the Restatement definition of 'public invitee' was not before this Court in *Preston* . . . ." *Ante* at 603. However, in that case we were required to consider whether a social guest was an invitee or a licensee. *Preston, supra* at 445. In considering that issue, we were obliged to examine the definition of an invitee and a social guest to determine whether the two were compatible. *Id.* at 450-451. We determined that they were not and that the status of a social guest is more consistent with that of a licensee. *Id.* at 451-452. Thus, our discussion of what constitutes an invitee was essential to the resolution of the case.

Accordingly, I find that the issue whether to adopt the Restatement definition of an invitee was squarely before the Court in *Preston*. I would apply *Preston* as precedent, binding on this case.[9]

B

The majority rejects the public invitee provision of § 332 and adopts the reasoning contained in the Flor-

---

[9] I note that, in other instances, we have adopted Restatement sections as the law of this state without formally identifying that we were doing so. See *Senior Accountants, Analysts & Appraisers Ass'n v Detroit*, 399 Mich 449, 458; 249 NW2d 121 (1976). In *Senior Accountants*, it was sufficient for us to have mentioned the Restatement section and applied it to that case for later Courts to recognize that we adopted it. See *Nummer v Dep't of Treasury*, 448 Mich 534, 557, n 2; 533 NW2d 250 (1995) (MALLETT, J., dissenting).

Similar to the manner of adoption we employed in *Senior Accountants*, in *Preston* we mentioned § 332 and then applied it to find that the plaintiff was not an invitee. *Preston, supra* at 451. Therefore, I disagree with the majority when it states that we have never adopted the public invitee provision of § 332.

ida case of *McNulty*, *supra*, as more consistent with our state's legal tradition. *Ante* at 604. In *McNulty*, the Florida Supreme Court held that, to be classified an invitee, one must have been on the property for a material or commercial purpose that benefited the invitor. *Id.* at 188. The Court rejected the plaintiff's argument that the defendant church received a benefit from his presence at a worship service, and labeled him a licensee. *Id.* at 189.

For over a century, Michigan has recognized that one can be classified as an invitee when on an invitor's property for a commercial purpose *or* pursuant to an invitation. See *Hargreaves*, *supra*. Thus, the *McNulty* decision runs contrary to recognized principles of Michigan law by imposing a commercial purpose requirement to the designation of an invitee. This Court has expressly stated, "Invitation is sufficient. Pecuniary profit to the owner is not essential." *Blakeley*, *supra* at 639. Therefore, the majority's reliance on *McNulty* is misplaced.

Furthermore, Florida itself has rejected the *McNulty* decision. See *Post v Lunney*, 261 So 2d 146 (Fla, 1972). In *Post*, the Florida Supreme Court adopted § 332, including the public invitee provision. *Id.* at 148. It pointed out that the *McNulty* mutual benefit test was too narrow and had the potential to cause unjust results. *Id.* at 149.

> For example, it would prohibit recovery for damages due to ordinary negligence to a "window-shopping" visitor to a store, while permitting recovery to a person who made a purchase, however small. To avoid these and similar results, "the economic benefit theory has been strained to the breaking point." [*Id.*, quoting *Smith v Montgomery Ward & Co*, 232 So 2d 195, 198 (Fla App, 1970).]

The Florida court applied the public invitee provision of § 332 to the case. *Id.* at 148. It concluded that the plaintiff was an invitee because she had been invited to enter property opened to members of the public for tours. *Id.* at 148-149.

The recognized law of Michigan is more consistent with the decision in *Post* than it is with the decision in *McNulty.* We have long recognized that one could be an invitee without benefiting the owner or being on the property for a commercial purpose. That principle is contained in the public invitee provision of § 332. Therefore, as the Florida court did in *Post,* this Court should find that the public invitee provision of § 332 is applicable to this plaintiff.[10]

C

Michigan's definition of a common-law invitee is identical to that contained in § 332, and § 332 has been, at least implicitly, adopted by *Preston.* However, even if I were to agree with the majority that the Restatement rule is not the law, public policy supports adoption of the Restatement view at this time. As previously stated, our common law is a flexible body of principles and is adaptable to changes in public policy. *Beech Grove, supra.* The application of the public invitee provision to this case is entirely consistent with that view. It is responsive to the public interest that is implicated when premises are opened

---

[10] The majority recognizes that most jurisdictions have adopted the public invitee definition provided in § 332. However, it states that our role is "not simply to 'count heads.'" *Ante* at 607. I agree that we should not "simply count heads," but neither should we "bury our heads in the sand" to avoid recognizing that our common law includes the public-invitee definition of an invitee.

to the public. Furthermore, § 332 provides greater protection to the public without unduly burdening property owners.

I agree with the Indiana Court of Appeals when it stated:

> The public invitee test set out in Restatement section 332(2) would require that the occupant open his premises to the public or to some broad segment of it. Thus, it would not extend invitee status to social guests. When premises are opened to the public, their use and condition begin to affect the public interest, so that it is reasonable for courts to impose upon the occupant a standard of reasonable care toward those members of the public who enter for the purpose for which they were invited. Prosser, [*Business visitors and invitees*, 26 Minn L R 573, 587 (1942)].
>
> The occupant does not lose control of his property; he can withdraw the invitation or restrict entry as he sees fit. *Id.* Neither does he owe a duty of reasonable care to the public in general. The test would further require that the visitor enter the premises for the particular purpose for which the occupant has encouraged the public to do so. It is this latter fact which raises the inference that the occupant will use reasonable care to keep the premises safe for the visitor.
>
> *       *       *
>
> Given the public interest involved and our recognition of the implication of safety which arises when the public is encouraged to enter premises for a particular purpose, we conclude that the public invitee test is a proper guide for determining invitee status. [*Fleischer v Hebrew Orthodox Congregation*, 504 NE2d 320, 323 (Ind App, 1987).]

## CONCLUSION

The public invitee provision of § 332 accurately reflects the common law of Michigan. It was adopted

by this Court in *Preston* and should be applied here. Furthermore, it reflects the sound public policy of protecting members of the public when premises are open to them.

I would affirm the judgment of the Court of Appeals. This case should be remanded to the trial court for a new trial in which the jury is instructed according to both provisions of the § 332 definition of an invitee.

CAVANAGH, J., concurred with KELLY, J.