*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERIC ANTILLA,

Plaintiff-Appellant,

UNPUBLISHED
May 9, 2019

v

CBOCS PROPERTIES, INC.,

Defendant-Appellee.

No. 342924
Bay Circuit Court
LC No. 17-003073-NO

Before: BOONSTRA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

In this premises liability action, plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. FACTUAL BACKGROUND

Plaintiff suffered injuries when he slipped and fell on the sidewalk outside defendant's restaurant. Plaintiff and his fiancée, Catherine Ramsey, went to the YMCA on the morning of March 25, 2015, and then Ramsey drove them to the Cracker Barrel restaurant. Ramsey parked in the first handicap parking spot next to the sidewalk to the restaurant, and plaintiff got out of the car first. Ramsey testified that she looked up and saw plaintiff's feet "up in the air" as he fell two or three steps from the car. Ramsey got out of the car and saw that plaintiff was unconscious, so she went into the restaurant to get help. She called 911 and came back outside with the restaurant manager, Kimberly Masker. According to Ramsey, the area where plaintiff fell was "all ice" and "he was laying right in the middle of it." She described the ice as "black ice" and said, "[T]he whole sidewalk was ice" and there was "ice everywhere." When Masker came outside with Ramsey, Ramsey "pointed to all the ice . . . everywhere."

An ambulance was dispatched at 7:47 a.m. and it arrived at the restaurant at 7:51 a.m. According to Ramsey, the EMS workers slipped in the parking lot and asked a Cracker Barrel employee to salt the area because they were unable to get plaintiff off the ice. However, Masker testified that she and the EMS workers did not have trouble with slipping. Plaintiff suffered a concussion and significant memory loss from his injuries. Plaintiff testified that he remembered

"absolutely nothing" about his fall other than "stepping out" of the car, and he "lost[,] to [his] knowledge[,] 30 years of memory."

Both Ramsey and plaintiff testified that it was a "nice day," and Ramsey said that it was not raining or misty and that she did not have to scrape the windows of her car before she drove to the YMCA. There was no snow on the ground and Ramsey did not notice that the pavement or sidewalks in the Cracker Barrel parking lot were damp. Ramsey testified that they arrived at the restaurant "before the sun came up," and "it wasn't bright light[,] but it was lighter" when plaintiff fell. Masker got to the restaurant at 4:30 a.m. and she said it was not raining at 6:15 a.m. or 6:30 a.m. Masker said it was "sprinkling" when she went out again at 7:00 a.m., but "[t]he temperature was above freezing."

Masker testified that the weather changed rapidly that morning, and "all of a sudden" the temperature dropped and there were "patches of ice all over . . . . It was a perfect example of flash freezing." She said that while she was outside the restaurant after plaintiff fell, she "could hear sirens all over" because there were a number of accidents. Edward Beckers was a dishwasher at the restaurant and he left his nearby home for work at approximately 7:30 a.m. Beckers said that when he got into his car, his windows had "freezing rain on them," the "side roads" on the drive from his house to the restaurant were "slippery," and he "had to take it easy." Beckers clocked in for work at 8:07 a.m. and then went outside to salt the sidewalk for the EMS workers. He said that he noticed "spots" of black ice on the sidewalk that he "could see . . . when the light hit it right, but other than that you couldn't see it." Masker also testified that "[t]here was black ice throughout [the] parking lot." She said that after plaintiff fell, she was able to see the ice outside in "patches" in the parking lot, including where plaintiff fell because it was "right at the base of his feet." Both parties submitted weather reports for the area on the day that plaintiff fell. The temperature at 7:53 a.m. on March 25, 2015, was 34 degrees and there was 0.01 inch of rain. As of 6:53 a.m., the conditions were listed as "overcast" and by 7:53 a.m., there was "light rain."

Defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10), contending that the black ice conditions were open and obvious, and, therefore, defendant did not have a duty to warn plaintiff of the conditions. Further, defendant argued that it did not have notice of the icy conditions before plaintiff fell. Following a hearing, the trial court agreed with defendant and granted summary disposition in its favor.

## II. OPEN AND OBVIOUS CONDITION

Plaintiff asserts that there is a genuine issue of material fact regarding whether the black ice in the parking lot was open and obvious. We disagree.

A trial court's decision with respect to a motion for summary disposition is reviewed de novo. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424; 751 NW2d 8 (2008).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable

to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). *Quinto v Cross & Peters Co*, 451 Mich 358, 547 NW2d 314 (1996) [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

When a plaintiff proceeds with a premises liability claim against a defendant, the plaintiff must establish the following:

> (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages. [*Estate of Trueblood v P & G Apartments, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 340642); slip op at 4-5 (quotation marks and citation omitted).]

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). This duty "requires the landowner to inspect the premises and, depending on the circumstances, make any necessary repairs or warn of any discovered hazards." *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000). However, the duty to warn or make safe does not extend to open and obvious dangers that are "wholly revealed by casual observation." *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 478; 760 NW2d 287 (2008) (quotation marks and citation omitted). At the same time, even if a condition is open and obvious, there may be "special aspects" that cause the condition to be "unreasonably dangerous." *Id*. When that is the case, the premises possessor's duty to protect the invitee extends to the hazard. *Id*. Special aspects "are those that make the conditions effectively unavoidable, or those that impose an unreasonably high risk of severe harm." *Id*. (quotation marks and citations omitted).[1]

Whether a condition is open and obvious depends on "whether an average user with ordinary intelligence would have been able to discover the danger and the risk presented upon casual inspection." *Id*. (quotation marks, alteration, and citation omitted). This is an objective test, "and the inquiry is whether a reasonable person in the plaintiff's position would have foreseen the danger, not whether the particular plaintiff knew or should have known that the condition was hazardous." *Id*. at 479. Importantly, observable ice is an open and obvious condition, and a premises possessor has no duty to warn of or remove such a hazard. *Id*. at 481.

In *Slaughter*, 281 Mich App at 483, this Court concluded that the black ice at issue was not an open and obvious condition. This Court considered the definition of black ice, noting "that it is either invisible or nearly invisible, transparent, or nearly transparent," and concluded that these characteristics are "inherently inconsistent with the open and obvious danger doctrine." *Id*. Therefore, black ice is only an open and obvious danger if it "would have been

---

[1] Plaintiff does not claim that there were any special aspects at issue in this case.

visible on casual inspection before the fall," or if there were "other indicia of a potentially hazardous condition." *Id*. Other such indicia include snow on the ground and any recent snowfall, as well as whether the plaintiff observed anyone else slip or fall in the vicinity or whether the black ice was "readily" discernible following the plaintiff's fall. *Id*. Additionally, "the circumstances and specific weather conditions present at the time of [the] plaintiff's fall are relevant." *Id*.

Our Supreme Court has elaborated on additional circumstances that may constitute other indicia of dangerous conditions. In *Janson v Sajewski Funeral Home, Inc*, 486 Mich 934, 935; 782 NW2d 201 (2010), the Supreme Court concluded that black ice conditions were open and obvious where:

> the slip and fall occurred in winter, with temperatures at all times below freezing, snow [was] present around the defendant's premises, mist and light freezing rain [were] falling earlier in the day, and light snow [was] falling during the period prior to the plaintiff's fall in the evening. These wintry conditions by their nature would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection.

Further, the Supreme Court held that black ice conditions were open and obvious when the ice was visible to four witnesses who observed the area after the plaintiff fell, and "there were numerous indicia of a potentially hazardous condition being present[.]" *Cole v Henry Ford Health Sys*, 497 Mich 881; 854 NW2d 717 (2014). In *Cole*, there were seven inches of snow on the ground, there had been a "recent thaw followed by consistent temperatures below freezing," and there was some precipitation the day before. *Id*. Accordingly, the ice was open and obvious because "a reasonably prudent person would have foresee[n] the danger of [the] icy conditions on the mid-winter night . . . ." *Id*.

In this case, Ramsey, Masker, and Beckers described the ice in defendant's parking lot as "black ice." Plaintiff was unable to remember anything about his fall, and, therefore, he did not provide testimony regarding whether he saw the ice in the parking lot before he fell. However, Ramsey testified that as soon as she saw that plaintiff had slipped, she "could see some ice everywhere" and the pavement "looked very slick" and "shiny." According to Masker, "There was black ice throughout [the] parking lot," and she described it as "patches" of "that clear sort of black ice." Beckers also testified that the ice in the parking lot was black ice that "was spotty, but [he] could see it." He said, "You could see [the ice] when the light hit it right, but other than that[,] you couldn't see it."

Therefore, the record demonstrates that the black ice was visible to at least three witnesses who observed the parking lot after plaintiff fell. Further, whether a dangerous condition was open and obvious is an objective inquiry, and, therefore, it is immaterial that plaintiff was unable to recall the conditions in the parking lot before he fell. See *Slaughter*, 281 Mich App at 479. Additionally, as in *Cole*, icy conditions may be open and obvious where black ice is visible to multiple observers after a fall. *Cole*, 497 Mich at 881. The record also reflects that when plaintiff fell, cold wintry conditions were present. In *Estate of Trueblood*, ___ Mich App at ___; slip op at 5-6, this Court quoted an order from the Michigan Supreme Court in *Ragnoli v North Oakland-North Macomb Imaging, Inc.*, 500 Mich 967 (2017), where the

Supreme Court reversed a decision from this Court addressing whether a genuine issue of material fact existed concerning "whether ice in a parking lot with low lighting at night was open and obvious." Notably, because the record in *Ragnoli* demonstrated that, even with the low lighting in the parking lot, wintry weather conditions were present, as well as "ice on the ground elsewhere on the premises[,]" such facts "rendered the risk of a black ice patch open and obvious" to the extent that a reasonably prudent person ought to have foreseen "the danger of slipping and falling in the parking lot." *Id.*; slip op at 5, quoting *Ragnoli*, 500 Mich at 967. Similarly, in the present case, the record reflects that wintry weather conditions existed at the time that plaintiff slipped and fell in defendant's parking lot.

For example, the weather reports submitted by plaintiff and defendant show that the temperature was near freezing at the time that plaintiff fell and there was "light rain" with 0.01 inch of accumulation. The day before plaintiff's fall, March 24, 2015, the low temperature in the early morning hours was 18 degrees Fahrenheit. Notably, in the early morning hours of March 25, 2015, before plaintiff fell, the temperature was well below freezing. Masker testified that it was "sprinkling" when she went outside around 7:00 a.m. and "[t]he temperature was above freezing." Masker said the weather conditions were a "perfect example of flash freezing," because "the temperature was 30, 32 degrees. And then all of a sudden it . . . dropped and it . . . froze and there [were] patches of ice all over . . . ." According to Masker, she and Ramsey had a conversation about "how the weather had changed," that there was "flash freezing," and that the YMCA had salted its parking lot. Additionally, Beckers said that there was "freezing rain" on his car windows around 7:30 a.m. and the "side roads" on his drive from his house to the Cracker Barrel were "slippery."

Notably, Ramsey, Masker, and Beckers all testified that the presence of black ice in defendant's parking lot at the time of plaintiff's fall was readily discernible on casual inspection. Additionally, the weather conditions at the time plaintiff fell included temperatures hovering near freezing, light precipitation in the form of freezing rain, and flash freezing. While the witnesses did not testify that snow was present at the time of plaintiff's fall, we agree with the trial court that the circumstances plaintiff encountered were such that a reasonably prudent person would have foreseen the potential danger of slipping and falling on black ice. *Slaughter*, 281 Mich App at 479. We likewise agree with the trial court that genuine issues of material fact did not exist concerning whether the black ice that plaintiff fell on was an open and obvious condition.[2]

---

[2] Given our disposition of this issue, we need not address plaintiff's remaining argument on appeal that defendant knew, or should have known, about the alleged dangerous condition on its land. This is because a landowner does not have a duty to protect or warn an invitee regarding dangers that are open and obvious. See *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012) ("Michigan law provides liability for a breach of [the] duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware . . . .")

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood