*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

HEATHER BARDELEBEN,

        Plaintiff-Appellant,

v

MICHAEL MILLIKIN, also known as MICHAEL
MILLIKEN, and JOEL WARMOLTS,

        Defendants-Appellees.

UNPUBLISHED
May 16, 2019

No. 343341
Allegan Circuit Court
LC No. 16-057429-NO

Before: GLEICHER, P.J., and RONAYNE KRAUSE and O'BRIEN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition to defendants under MCR 2.116(C)(10). We affirm.

This case arose after plaintiff suffered injuries from falling on defendants' indoor staircase on November 26, 2015. Defendants were the joint owners of a vacation rental property. Defendants rented the house to James Siegel from November 26, 2015 to November 29, 2015 for the Thanksgiving holiday. The house had a hardwood staircase with a railing that led to the upstairs bedrooms. The staircase had 15 risers and 14 treads. The lower portion of the staircase curved to the right when viewed from the bottom of the staircase, and the upper portion of the staircase was straight. The first five stairs from the bottom of the staircase were "winder" stairs, meaning that the treads on those stairs had nonparallel edges and were narrower on the inside of the stairs near the railing than the outside of the stairs near the wall. The remaining stairs were straight, nonwinder stairs.

Plaintiff arrived at the vacation rental house on November 26 at approximately noon. Upon arriving, plaintiff walked upstairs using the staircase without difficulty. An hour later, plaintiff descended the stairs barefoot while holding a water bottle in her right hand and holding the handrail with her left hand. Approximately midway to three-quarters of the way down the stairs, plaintiff's foot curled under her, and she fell down the remainder of the stairs. Plaintiff testified that she did not look at each stair where she placed her foot before she fell. Plaintiff testified that nothing obstructed her ability to see the stairs and that the stairs were well-lit.

-1-

Plaintiff brought this action under theories of premises liability and violations of MCL 554.139. Defendants eventually moved for summary disposition under MCR 2.116(C)(10). In granting defendants' motion, the trial court held that the open and obvious danger doctrine barred plaintiff's premises liability claim; the condition of the stairs were not unreasonably dangerous; and defendants did not breach their statutory duties under MCL 554.139 because the stairs were fit for their intended use and there were no defects in the stairs in need of reasonable repair.

On appeal, plaintiff argues that the trial court's decisions on her premises-liability claim and her claim under MCL 554.139 were erroneous.

"This Court reviews de novo the grant or denial of a motion for summary disposition." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). "In making this determination, the Court reviews the entire record to determine whether defendant was entitled to summary disposition." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim and may be granted when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id*. at 120. In reviewing such a motion, a court considers the pleadings, affidavits, depositions, admissions, and documentary evidence in a light most favorable to the nonmoving party. *Id*. "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006).

We first address the trial court's ruling on plaintiff's premises-liability claim. "In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damage." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). A landowner's duty to those who come on his or her land depends on the status of the visitor. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). "An 'invitee' is 'a person who enters upon the land of another upon an invitation . . . .' " *Id*. at 596-597. In order to establish invitee status, a plaintiff must show that the premises were held open for a commercial purpose, meaning a business benefit to the landowner or a mutual, material benefit to the landowner and the invitee, rather than a social benefit. *Id*. at 604-605. In *Stanley v Town Square Co-op*, 203 Mich App 143, 147-148; 512 NW2d 51 (1993), this Court explained:

> The landlord grants to tenants rights of exclusive possession to designated portions of the property, but the landlord retains exclusive possession of the common areas. The landlord grants to tenants a license to use the common areas of the property. Tenants pay for this license as part of their rent. Therefore, tenants are invitees of the landlord while in the common areas, because the landlord has received a pecuniary benefit for licensing their presence.
>
> A landlord generally grants to the tenants the right to invite others to use the common areas of the property in order that they might gain access to the property under the tenants' control. Because the tenants do not receive any pecuniary benefit from the visits of their social guests, those invited as social

guests of the tenants are licensees for the purpose of defining the duty their hosts owe them. However, the landlord does receive some pecuniary benefit. Part of the rent paid to the landlord is the consideration for giving to the tenants the right to invite others onto the property. Thus, the same duty that a landlord owes to its tenants also is owed to their guests, because both are the landlord's invitees. [Citations omitted.]

Siegel was renting the home from defendants, and plaintiff was Siegel's social guest. Thus, plaintiff was defendants' invitee for purposes of her premises-liability claim.[1] See *id*. at 148. "[A] premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). A landowner breaches the duty owed to an invitee "when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012). But "[t]he possessor of land 'owes no duty to protect or warn' of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id*. at 460-461, quoting *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992).

The condition of the staircase that plaintiff contends caused her fall was the tread depth variations in the winder steps of the staircase. Plaintiff contends that this condition was not open and obvious and that the trial court erred by ruling otherwise. We disagree.

"Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner*, 492 Mich at 461. This is an objective inquiry looking at "the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff." *Lugo*, 464 Mich at 524. In *Bertrand v Alan Ford, Inc*, 449 Mich 606, 614; 537 NW2d 185 (1995), our Supreme Court stated that "the danger of tripping and falling on a step is generally open and obvious[.]" The *Bertrand* Court went on to explain that

because steps are the type of everyday occurrence that people encounter, under most circumstances, a reasonably prudent person will look where he is going, will observe the steps, and will take appropriate care for his own safety. Under ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary steps "foolproof." [*Id*. at 616-617.]

---

[1] As will be discussed later, plaintiff contends that she was defendants' tenant. That dispute, however, is not dispositive to whether plaintiff was defendants' invitee for purposes of her premises-liability claim because it is undisputed that Siegel was defendants' tenant and that plaintiff was Siegel's social guest.

Here, plaintiff complains of falling down steps, but as stated in *Bertrand*, the danger of tripping and falling on a step is generally open and obvious. *Id*. at 614. Plaintiff argues that it is not simply the danger of falling down steps that she is complaining of, but the danger posed by the variations in the tread depths between the bottom, winder stairs and the upper, rectangular stairs. Yet, on casual inspection, an average person with ordinary intelligence could readily see the curvature of the winder stairs and the corresponding variations to the steps' tread depths. Although the person may not be able to see the exact variation in the tread depths, an average person would nonetheless notice that the tread depths differed to some degree. Thus, a reasonably prudent person would look where she is going, observe the variations in the steps' tread depths, and take appropriate care for her own safety. See *id*. at 616. In short, the variations in the steps' tread depths were open and obvious, and defendants had no duty to warn or protect plaintiff from the danger.

Plaintiff, however, argues that the steps' tread depth variations were a special aspect that made the steps unreasonably dangerous.[2] In *Bertrand*, our Supreme Court stated that "there may be special aspects of these particular steps that make the risk of harm unreasonable, and, accordingly, a failure to remedy the dangerous condition may be found to have breached the duty to keep the premises reasonably safe." *Bertrand*, 449 Mich at 617. In *Lugo*, our Supreme Court explained how courts should determine whether a condition is unreasonably dangerous thereby constituting a special aspect:

> In considering whether a condition presents such a uniquely dangerous potential for severe harm as to constitute a "special aspect" and to avoid barring liability in the ordinary manner of an open and obvious danger, it is important to maintain the proper perspective, which is to consider the risk posed by the condition *a priori*, that is, before the incident involved in a particular case. . . . [The law] does not allow the imposition of liability merely because a particular open and obvious condition has some potential for severe harm. [*Lugo*, 464 Mich at 519 n 2.]

In *Hoffner*, our Supreme Court explained that the "special aspects" exception to the open and obvious doctrine is "narrow," and that

> [u]nder this limited exception, liability may be imposed only for an unusual open and obvious condition that is unreasonably dangerous because it present[s] an extremely high risk of severe harm to an invitee in circumstances where there is no sensible reason for such an inordinate risk of severe harm to be presented. The touchstone of the duty imposed on a premises owner being reasonableness, this narrow "special aspects" exception recognizes there could exist a condition that presents a risk of harm that is so unreasonably high that its presence is

---

[2] Plaintiff does not argue that the danger posed by the variations in the steps' tread depths was effectively unavoidable. See *Hoffner*, 492 Mich at 463 ("This Court has discussed two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*.").

inexcusable, even in light of its open and obvious nature. [*Hoffner*, 492 Mich at 462 (quotation marks and citation omitted; footnote omitted; second alteration in *Hoffner*).]

Applying this caselaw to the facts here, no reasonable juror could conclude that the variation in the steps' tread depths was unreasonably dangerous. The alleged danger posed by the condition was falling down, at most, five steps of a staircase. Falling down five steps does not pose a risk of severe harm. Compare *Lugo*, 464 Mich at 518 (explaining that an example of a danger that poses a risk of severe harm is "an unguarded thirty foot deep pit in the middle of a parking lot"). And the variations in the steps' tread depths does not pose an unreasonably high likelihood of harm; an "ordinarily prudent" person, *Bertrand*, 449 Mich at 615, would typically be able to see that the steps' tread depths differed, and would use caution when walking on the stairs or would avoid the condition altogether. See *Lugo*, 464 Mich at 520 ("The condition does not involve an especially high likelihood of injury. Indeed, an ordinarily prudent person . . . would typically be able to see the pothole and avoid it.") (Quotation marks and citation omitted.)

Because the condition of the stairs was open and obvious, and because plaintiff failed to establish that the condition was unreasonably dangerous, the open and obvious doctrine bars plaintiff's premises liability claim. See *Hoffner*, 492 Mich at 473-474. Accordingly, we need not further address plaintiff's common-law claims.

Plaintiff next argues that the trial court erred in granting defendants' motion for summary disposition because defendants breached their statutory duties under MCL 554.139(1).

"MCL 554.139 provides a specific protection to lessees and licensees of residential property in *addition* to any protection provided by the common law." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). MCL 554.139 provides, in pertinent part:

(1) In every lease or license of residential premises, the lessor or licensor covenants:

(a) That the premises and all common areas are fit for the use intended by the parties.

(b) To keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located, except when the disrepair or violation of the applicable health or safety laws has been caused by the tenants wilful or irresponsible conduct or lack of conduct.

As explained by our Supreme Court in *Mullen v Zerfas*, 480 Mich 989, 990 (2007), "The covenants created by [MCL 554.139(1)] establish duties of a lessor or licensor of residential property to the lessee or licensee of the residential property, most typically of a landlord to a tenant. By the terms of the statute, the duties exist between the contracting parties." These duties do not extend to "a social guest of the tenant." *Id*.

We conclude that plaintiff was not a party to the vacation rental agreement and, therefore, defendant owed no duty to plaintiff under MCL 554.139(1). See *id*. Plaintiff argues that it is a

question of fact for the jury whether she was a party to the vacation rental agreement because before Siegel signed the contract, he listed plaintiff as one of the guests that would be at the home. Yet plaintiff never signed the contract; Siegel and Millikin were the only signatories. While the contract referred to both Siegel and plaintiff as guests, the rental agreement referred to Siegel as "Guest" (with a capital "G") and specified his contractual obligations, conditions, and limitations for the rental, whereas plaintiff was referred to as "guest" (lower case "g") and only referred to her as a person who would stay at the house during the rental period. More importantly, plaintiff did not have any contractual duties to defendants; if the amount owed for the rental was not paid, defendants had no right to collect that payment from plaintiff. Likewise, plaintiff did not have any contractual rights under the contract; for instance, plaintiff had no right to claim a deposit paid for the rental. Lastly, there was no consideration between plaintiff and defendants for plaintiff to use the house. Based on this evidence, we conclude as a matter of law that plaintiff was not one of the contracting parties to the vacation rental agreement. And because the duties under MCL 554.139(1) only "exist between the contracting parties" and plaintiff was only Siegel's social guest, defendant owed no duty to plaintiff under MCL 554.139(1). *Mullen*, 480 Mich at 990.[3]

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien

---

[3] Plaintiff also argues that the trial court erred by ruling that the variations in the stairs' tread depths were not a violation of the applicable building codes, but we need not decide this issue because it is not dispositive to our decision.