*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH NATHAN, the Chapter 7 Trustee of the
Bankruptcy Estate of LORETTA CHARLES,

       Plaintiff-Appellee,

v

DAVID LEADER MANAGEMENT, INC, and
BRISTOL VILLAGE ASSOCIATES LP, doing
business as BRISTOL VILLAGE APARTMENTS,

       Defendants-Appellants.

FOR PUBLICATION
August 4, 2022
9:05 a.m.

No. 357420
Macomb Circuit Court
LC No. 2020-003180-NO

Before: SHAPIRO, P.J., and RICK and GARRETT, JJ.

GARRETT, J.

Loretta Charles slipped and fell on snow or ice after exiting one of defendants' apartment buildings. Plaintiff brought suit against defendants, asserting claims of premises liability and ordinary negligence.[1] The trial court denied defendants' motion for summary disposition brought under MCR 2.116(C)(10) (no genuine issue of material fact). We agree with defendants that plaintiff's claim sounds exclusively in premises liability, such that the negligence claim should be dismissed. However, plaintiff's premises liability claim may proceed because there remains a question of fact whether the condition that Charles confronted was effectively unavoidable and whether defendants' breach of a duty caused Charles's injuries. Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

In February 2020, Loretta Charles served as the caretaker for her elderly mother, who lived at Bristol Village. On the morning of February 27, 2020, Charles left her mother's apartment to go to an appointment with her attorney. It had snowed the day before, and Charles testified that it

---

[1] Plaintiff Kenneth Nathan, filing suit on Charles's behalf, is the trustee for Charles's bankruptcy estate.

was still snowing that morning. The apartment building had an exit in both the front and back. The walkways leading from the front and back exits were both completely covered with ice. Charles attempted to get to the street by walking in the snow-covered grass alongside the front walkway, but she slipped and fell after putting her right foot down.

Plaintiff brought suit against defendants for premises liability and ordinary negligence, alleging that Charles slipped and fell on ice leaving the apartment building because defendants negligently failed to salt and shovel the entranceway. Following discovery, defendants moved for summary disposition. Defendants argued that plaintiff's claim sounded exclusively in premises liability, and that the premises liability should be dismissed because plaintiff failed to establish causation and the claim was barred by the open and obvious doctrine. The trial court denied defendants' motion, concluding that Charles's step down from the porch to avoid the icy sidewalk was itself a dangerous condition and that whether the condition was "unavoidable and unreasonably dangerous" was a fact question for the jury. This appeal followed by leave granted.[2]

## II. ORDINARY NEGLIGENCE CLAIM

Defendants first argue that plaintiff's claim sounds exclusively in premises liability, such that the trial court should have dismissed the ordinary negligence claim raised in plaintiff's complaint.

Michigan law distinguishes between claims of ordinary negligence and premises liability. *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012). "If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Buhalis*, 296 Mich App at 692. However, an ordinary negligence claim may be brought "for the overt acts of a premises owner on his or her premises." *Kachudas v Invaders Self Auto Wash, Inc*, 486 Mich 913, 914; 781 NW2d 806 (2010), citing *Laier*, 266 Mich App 482.

Plaintiff rests his ordinary negligence claim on the fact that defendants' employees did not sufficiently apply a salting agent to the walkways or clear the drifting snow. These factual allegations relate to the creation of a dangerous condition on the premises caused by defendants' failure to act, and they do not support an independent claim for ordinary negligence. In *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 621; 971 NW2d 716 (2021), a similar case involving a slip-and-fall on an icy community walkway, we held that the plaintiff's claim sounded exclusively in premises liability:

> Plaintiff alleges that a condition on defendant's land, i.e., a patch of black ice on the sidewalk, constituted a dangerous condition on the property that gave rise to her injury. Because plaintiff's claim is based on defendant's duty as the possessor of the land on which she fell and not on defendant's ability to conform to a particular standard of care, we treat plaintiff's claim as one of premises liability. Although

---

[2] *Nathan v David Leader Mgt, Inc.,* unpublished order of the Court of Appeals, entered September 16, 2021 (Docket No. 357420).

plaintiff alleges that the dangerous condition was created by the actions of defendant or its employees—or more accurately, their failure to act—that allegation does not transform a premises-liability action into one of ordinary negligence. [*Jeffrey-Moise*, 336 Mich App at 625 (citation omitted).]

This reasoning applies equally to plaintiff's allegations in the present case. Accordingly, plaintiff's complaint sounds exclusively in premises liability, and defendants were entitled to summary disposition on plaintiff's claim of ordinary negligence.

## III. OPEN AND OBVIOUS DOCTRINE

Defendants next argue that the trial court erred by not dismissing plaintiff's premises liability claim because the icy condition was open and obvious and no special aspects made the condition effectively unavoidable or unreasonably dangerous.

This Court reviews a trial court's decision on a motion for summary disposition made under MCR 2.116(C)(10) de novo. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). Under MCR 2.116(C)(10), the party moving for summary disposition is entitled to judgment as a matter of law when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact." The reviewing court considers affidavits, pleadings, depositions, and other evidence in the light most favorable to the non-moving party. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). Whether a landowner owes a duty to a visitor depends on that visitor's status as either a trespasser, licensee, or invitee. *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). A premises owner owes the greatest duty of care to an invitee. *Id*. at 597.[3]

---

[3] It is undisputed that Charles was an invitee with respect to the duty defendants owed her because she was visiting her mother, one of defendants' tenants. "[T]enants are invitees of the landlord while in the common areas" because the landlord has "exclusive possession of the common areas" and authorizes tenants to use them in exchange for rent. *Stanley v Town Square Co-op*, 203 Mich App 143, 147; 512 NW2d 51 (1993). A landlord also generally gives "tenants the right to invite others onto the property," and therefore "the same duty that a landlord owes to its tenants is also owed to their guests." *Id*. at 148. Consequently, as to the safety of the walkways exiting the apartment building, defendants owed Charles a duty as an invitee. The duty owed by a *landlord* to a tenant and the tenant's visitor in common areas is distinct from the duty that the *tenant* personally owes to their social guests. See *Stitt*, 462 Mich at 596 (explaining that social guests are typically licensees who assume ordinary risks associated with their visit).

-3-

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001). However, this duty generally does not extend to open and obvious dangers. *Id*. A condition is open and obvious if "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." *Novotney v Burger King Corp*, 198 Mich App 470, 475; 499 NW2d 379 (1993). This inquiry is objective, focusing on "whether a reasonable person in the plaintiff's position would have foreseen the danger, not whether the particular plaintiff knew or should have known that the condition was hazardous." *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 479; 760 NW2d 287 (2008). "[A]bsent special circumstances, Michigan courts have generally held that the hazards presented by snow, snow-covered ice, and observable ice are open and obvious and do not impose a duty on the premises possessor to warn of or remove the hazard." *Id*. at 481. For example, this Court held "as a matter of law that, by its very nature, a snow-covered surface presents an open and obvious danger because of the high probability that it may be slippery." *Ververis v Hartfield Lanes (On Remand)*, 271 Mich App 61, 67; 718 NW2d 382 (2006).

The snow-covered grass surface where Charles fell was an open and obvious danger. Charles testified that she observed that the walkway was completely iced over, and the grass alongside it was covered with three to four inches of snow. Therefore, a reasonable person in Charles's position would have discovered the risk presented by a visibly snow-covered surface upon casual inspection. And a snow-covered surface necessarily constitutes an open and obvious danger. See *Ververis*, 271 Mich App at 67.

That does not end our inquiry, however. Although a premises owner generally has no duty to protect an invitee from open and obvious conditions, liability may attach when "special aspects" of the condition present an unreasonable risk of harm. *Lugo*, 464 Mich at 517. Put differently, "if the condition is open and obvious, a plaintiff who is injured by the condition may avoid summary disposition only if there are special aspects to the condition." *Hoffner v Lanctoe*, 492 Mich 450, 464; 821 NW2d 88 (2012).

Our Supreme Court has identified two classes of special aspects of an open and obvious danger that could give rise to liability: "when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*." *Id*. at 463. An open and obvious condition is effectively unavoidable when an individual, "for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard." *Id*. at 469. "As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Id*. In this case, the parties disagree about whether the condition that Charles confronted was effectively unavoidable.

In *Lugo*, 464 Mich at 518, our Supreme Court provided a hypothetical illustration of an effectively unavoidable danger: "a commercial building with only one exit for the general public where the floor is covered with standing water," such that "a customer wishing to exit the store must leave the store through the water." More than a decade later, the Court applied this special aspect exception in *Hoffner*, 492 Mich at 469, a case involving a plaintiff's claim that the icy sidewalk at the entrance to a fitness center was effectively unavoidable because she had a contractual right to enter the gym as a paid member. Our Supreme Court rejected this attempted

application of the unavoidability exception, explaining that "[a] general interest in using, or even a contractual right to use, a business's services simply does not equate with a compulsion to confront a hazard and does not rise to the level of a 'special aspect' characterized by its *unreasonable risk of harm*." *Id*. at 472-473.

Most recently, our Supreme Court applied the unavoidability exception to a case involving an employee who confronted an ice-covered parking lot while attempting to enter her workplace. *Estate of Livings v Sage's Investment Group, LLC*, 507 Mich 328, 332-333; 968 NW2d 397 (2021). The *Livings* Court held:

> [A]n open and obvious condition can be deemed effectively unavoidable when a plaintiff must confront it to enter his or her place of employment for work purposes. However, in assessing this question, it is still necessary to consider whether any alternatives were available that a reasonable individual in the plaintiff's circumstances would have used to avoid the condition. [507 Mich at 333.]

The Court explained that this fact-dependent analysis focused objectively "on whether a reasonable premises possessor in the defendant's circumstances could reasonably foresee that the employee would confront the hazard despite its obviousness." *Id.* at 346-347. But "[i]f an employee could have avoided the condition through the use of due care under the circumstances, then the condition was not effectively unavoidable." *Id*. For instance, the availability of a safe alternative path might render the dangerous condition avoidable. *Id*. However, because it is "reasonable to anticipate that a person will proceed to encounter a known or obvious danger for purposes of his or her work," a court cannot conclude that a hazard was avoidable "simply because the employee could have elected to skip work or breach other requirements of his or her work." *Id*. at 345, 347.

Since *Livings*, this Court has had a few opportunities to interpret and apply the unavoidability exception to cases involving different employment situations. In *Bowman v Walker*, ___ Mich App ___; ___ NW2d ___ (2022); slip op at 1, a tenant slipped and fell on ice while *leaving* her apartment to go to work. We recognized that "the same principles [from *Livings*] apply to a tenant injured while encountering a hazard when leaving his or her place of residence in order to travel to work." *Id*. at 5. Therefore, we held:

> Because plaintiffs have presented sufficient evidence to show that Bowman confronted the snow and ice to travel from her residence to her workplace for purposes of her employment, and because defendants have not shown as a matter of law that any reasonable alternative would have allowed Bowman to avoid the hazard, there is a genuine question of material fact as to whether the condition was effectively unavoidable. [*Id*.]

Further, in support of his argument, plaintiff cites this Court's recent decision in *Wezalis v Rosenberg*, unpublished per curiam opinion of the Court of Appeals, issued January 27, 2022 (Docket No. 347613). Although "unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value," and we choose to do so here. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017). In *Wezalis*, unpub op at 1, the plaintiff had an appointment at the defendant's home to handle a claim

involving personal property insurance. After a large snowstorm occurred the night before the appointment, the plaintiff attempted to postpone, but the defendant insisted that the plaintiff keep the appointment. *Id*. at 2. Despite the fact that the plaintiff could have still chosen to reschedule the appointment, the plaintiff elected to accept the job and drive to the defendant's home. *Id*. Upon arriving at the defendant's home for the appointment, the plaintiff slipped and fell on either snow or ice on the driveway. *Id*. at 5. The evidence established that there was no alternative route for the plaintiff to avoid the dangerous condition and reach the house. *Id*. Although the plaintiff was not "in a strict legal sense" an "employee" of the defendant, the analysis from *Livings* still applied. *Id*. Accordingly, we held that there was a genuine issue of material fact whether the hazard on the driveway was effectively unavoidable.

This case presents another variation on the facts presented in *Livings*, *Bowman*, and *Wezalis*. Here, viewing the evidence in the light most favorable to plaintiff, Charles slipped and fell confronting a dangerous condition while leaving her place of employment. Charles testified that she was her mother's caretaker and had been staying at her mother's apartment for the two nights before the fall. While Charles was not her mother's employee, in the strict legal sense, a fact-finder could reasonably conclude that she was serving in an employment capacity. Taking care of a loved one, even when unpaid, shares many characteristics with traditional employment. And it is not this Court's role to "sit in judgment of the social value of various jobs." *Livings*, 507 Mich at 347 n 16. Therefore, drawing all reasonable inferences in plaintiff's favor, Charles was present at her mother's apartment for work purposes.

Next, defendants argue that Charles had a viable path to avoid any dangerous wintry conditions because plaintiff has not established that "the snow in this instance was so severe as to preclude it is an alternate route." Viewing the evidence in the light most favorable to plaintiff, the grassy path that Charles chose was not a safe alternate route under the circumstances. The evidence of snow accumulation on the grass, together with testimony from defendants' maintenance employee that snow was known to drift towards the building where Charles exited, creates a genuine issue of material fact as to whether Charles could have taken a "different path" to avoid the condition. See *Livings*, 507 Mich at 347. Nor does the evidence establish as a matter of law that Charles could have "avoided the condition through the use of due care under the circumstances." See *id*. All other routes exiting the building were covered in ice. Therefore, a fact-finder could reasonable conclude that Charles needed to confront this hazard to leave her place of employment.

Ultimately, the applicability of the unavoidability exception in this case turns on whether Charles had any reasonable alternative to avoid the hazard. Defendants argue that *Livings* and *Wezalis* do not apply here because Charles fell when she was *leaving* her mother's apartment, and she was not going to work. Defendants contend that Charles failed to present any evidence of an adverse consequence that she would have suffered had she waited for weather conditions to improve, or that she could not reschedule or conduct the appointment remotely.

First, the distinction between arriving and leaving is largely a distinction without a difference, as this Court correctly explained in *Bowman*. Whether an individual is arriving at work or leaving their home to head to work, the analysis from *Livings* applies. See *Bowman*, ___ Mich App at ___; slip op at 5. The mere fact that Charles was leaving rather than entering the apartment building is of no matter. Second, we believe there is a question of fact as to whether "a reasonable

premises possessor in [defendants'] circumstances could reasonably foresee that [Charles] would confront the hazard despite its obviousness." See *Livings*, 507 Mich at 346. Under this objective inquiry, "a premises possessor might expect a reasonable person to confront a hazard to enter his or her workplace." *Id*. at 346 n 14. The same logic applies to exiting the workplace. In this case, Charles was attempting to exit her mother's apartment—where she had been caretaking—in order to attend to an appointment with an attorney. A landlord cannot expect that all of its tenants, or their caretakers, will be able to be remain inside on snowy days and avoid potentially dangerous wintry conditions. See *Livings*, 507 Mich at 345.

Moreover, defendants are correct that plaintiff presented no evidence regarding any attempts to postpone her appointment with her attorney or the consequences that would have resulted had Charles missed the appointment. But it cannot be the case that a reasonable person must wait indefinitely to leave their place of employment until conditions have improved before confronting an open and obvious danger. Just as the ability to skip work is not a "reasonable alternative" to avoid a dangerous condition, *Livings*, 507 Mich at 347, the ability to stay at work may not be a reasonable alternative under the circumstances. Here, considering that Charles had been staying at her mother's apartment for two nights in a caretaking role and needed to exit the building to attend an appointment with her attorney, a reasonable jury could infer that no "alternatives were available that a reasonable individual in the plaintiff's circumstances would have used to avoid the condition."[4] Accordingly, under the totality of the circumstances, there is a question of fact for the jury regarding whether the snow-covered path was effectively unavoidable. The trial court did not err by concluding that plaintiff's claim of premises liability was not barred under the open-and-obvious doctrine.

## IV. CAUSATION

Lastly, defendants argue that the premises liability claim should be dismissed for failure to prove the element of causation.

As previously noted, one element of negligence that a plaintiff must prove in a premises liability action is that the defendant's breach of a duty caused the plaintiff's injuries. See *Benton*, 270 Mich App at 440. For this analysis, "two causation concepts work in tandem." *Estate of Taylor by Taylor v Univ Physician Group*, 329 Mich App 268, 278; 941 NW2d 672, 677 (2019).

> First, a plaintiff must demonstrate that 'but for' the defendant's negligence, the plaintiff's injury would not have occurred. Once a plaintiff produces the factual support establishing a logical sequence of cause and effect, the plaintiff must also come forward with evidence supporting that the actual cause was proximate, meaning that it created a foreseeable risk of the injury the plaintiff suffered. [*Id*.]

---

[4] We also note that the facts of this case are far more analogous to *Livings* than to *Hoffner*. Charles was not confronting the snowy and icy conditions as part of her "contractual right to use[] a business's services," nor did she encounter the hazard for some recreational purpose. See *Hoffner*, 492 Mich at 472. Rather, Charles confronted the condition leaving her place of employment.

Put differently, proximate cause considers whether the harm caused to the plaintiff "was the general kind of harm the defendant negligently risked." *Ray v Swager*, 501 Mich 52, 64; 903 NW2d 366 (2017) (quotation marks and citation omitted). A plaintiff may rely on circumstantial evidence to establish causation, but the circumstantial proof "must facilitate reasonable inferences of causation, not mere speculation." *Skinner v Square D Co*, 445 Mich 153, 163-164; 516 NW2d 475 (1994).

Charles presented sufficient evidence that defendants' failure to diminish the hazard of ice on the walkways led her to step down onto the snow-covered grass, and therefore was the factual and proximate cause of her fall and injuries. Plaintiff's complaint alleges that Charles slipped and fell on ice in the common area entranceway after defendants failed to salt and maintain a safe access point. Further, Charles testified that she fell immediately upon putting her right foot down onto the snow-covered grass. Although we agree with defendants that Charles's testimony was inconsistent and imprecise at times, the totality of her testimony provided a sufficient basis to infer that Charles slipped and fell on snow or ice, and that Charles only took the path she did because of defendants' alleged negligent conduct in the failure to remediate ice on the walkway. For instance, after Charles testified at her deposition that she did not know "exactly what happened" to cause her fall, the following exchange occurred:

> *Q.* And you don't know whether or not the snow caused you to fall down; is that correct?
>
> *A.* No, that's not correct. I fell down. I don't remember exactly – pinpoint second of it all. I do know that I put my right foot down, and then I fell on all fours.
>
> *Q.* But, so what about the snow made you fall down?
>
> *A.* When I put my right foot down on the grass portion, I fell. Now, what happened? I can't say it was the ice. I can't say it was the snow. I don't know what was completely up under there. I did fall down on all fours once I put that right foot down.

Drawing reasonable inferences from this testimony, Charles could not say whether it was the ice *or* the snow that caused her fall, but she never claimed that the ice and snow were unrelated to the cause of her fall.

Further, evidence from a snow report and the testimony of defendants' maintenance employees suggests that not enough salting agent was used on February 26, 2020, the day before Charles's fall. The maintenance employees both confirmed that the snow report revealed three chloride bags had been used on February 26, but at least eight bags were needed to salt the entire apartment complex. Under the circumstances, it was foreseeable that the failure to use the necessary amount of salting agent on the apartment entranceways would lead individuals exiting the buildings to either slip and fall on the ice, or to seek a path around the ice, which included walking on the adjacent snow-covered grass. The snow report also indicated that it was snowing overnight on February 26 into February 27, and that the snow was blowing from high winds. One employee testified that the building where Charles exited experienced drifting snow and that he saw some drifting snow on the sidewalk when he went to check the building after being informed

of Charles's fall. Viewing all of this evidence in the light most favorable to plaintiff, there is non-speculative evidence as to causation "upon which reasonable minds might differ," precluding summary disposition. See *West*, 469 Mich at 183.

Defendants also assert that while it is theoretically possible that Charles slipped on ice, it was equally plausible that Charles—due to her arthritis—stumbled, tripped, or her leg buckled. But these alternative causes for Charles's fall lack evidentiary support themselves. We decline to accept these speculative alternative theories as a way to conclude that plaintiff has not met his burden at the summary disposition stage on causation. Accordingly, because reasonable inferences drawn from plaintiff's evidence create a genuine issue of material fact as to causation, the trial court did not err by denying defendants' motion for summary disposition.

## V. CONCLUSION

Plaintiff's claim sounds exclusively in premises liability, and defendants are entitled to summary disposition on plaintiff's claim of ordinary negligence. However, plaintiff's premises liability claim can proceed because there is a genuine issue of material fact whether the dangerous condition was effectively unavoidable and whether defendants' breach of a duty caused Charles's injuries.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Douglas B Shapiro
/s/ Michelle M. Rick