*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAUL THOM,

Plaintiff-Appellant,

v

GARY S. PALMER,

Defendant-Appellee.

UNPUBLISHED
September 29, 2022

No. 358869
Oakland Circuit Court
LC No. 2020-183637-NO

Before: GLEICHER, C.J., and MARKEY and PATEL, JJ.

PER CURIAM.

Paul Thom fell down the stairs in Gary Palmer's home while he was moving a new furnace into the basement. Although Thom presented evidence that the stairwell was not up to code and unsafe, the danger was open and obvious and Thom did not create a genuine issue of material fact that the condition was unreasonably dangerous or effectively unavoidable. We affirm.

## I. BACKGROUND

We consider the evidence in the light most favorable to Thom, as we must when reviewing a summary disposition ruling under MCR 2.116(C)(10). In September 2018, Palmer purchased a furnace through Thom and hired Thom to install it. Thom had been in Palmer's home twice before the day in question: once in 2006 to repair Palmer's old furnace and two weeks before the day in question to inspect the furnace. On the day in question, Thom and his apprentice, Patrick Johns, had to move the new furnace into the basement of Palmer's home. Thom walked backward down the staircase and supported the bottom of the furnace box, while Johns maneuvered the furnace down the stairs on a dolly or hand cart. About halfway down, Thom fell. Thom testified that he does not know what caused the fall and his partner could not see around the box to determine the cause. Thom tried to stop the fall by reaching out to grab the handrail normally found on a staircase, but the handrail had been removed. In fact, Thom observed that there was no handrail in the stairway before he began his descent. Thom fell down the remaining stairs, landed on the concrete floor, and severely fractured his leg. When deposed Thom stated that grabbing a handrail "definitely would have prevented the fall."

-1-

Thom filed suit against Palmer in September 2020, raising claims of premises liability, negligence, and violations of state and local building codes. During discovery, Thom produced a report from a safety consultant, Steven J. Ziemba, opining that the stairwell was "unreasonably dangerous." Ziemba noted that the lack of overhead lighting and a handrail were building code violations. Ziemba further opined that the stairwell was unreasonably steep and the steps were too narrow "to safely support a foot." The linoleum tile and nose plates on the stairs were "worn," making the steps more slippery.

The circuit court summarily dismissed Thom's suit.[1] The court reasoned that the danger was open and obvious and did not present any special aspects. The court noted that steps are an "everyday occurrence that people encounter" and that falls on stairwells support a premises liability claim only if there is something unusual about the stairs that creates an unreasonable risk. The court cited an unpublished Court of Appeals opinion for the proposition that this Court has repeatedly held that stairs do not "create an unreasonably dangerous condition if there is no handrail, even if there are other common irregularities such as steepness, ice, slanted threads, dirt, etc." The court further asserted that the violation of a building code does not support the existence of a unique condition that renders the stairway unreasonably dangerous. Rather than the lack of the handrail and narrow tread rendering the stairwell unreasonably dangerous, the court determined that Thom's activities created the danger—specifically walking backward down the stairs while supporting a heavy object.

The circuit court also rejected Thom's position that the danger was effectively unavoidable because he had to move the furnace into Palmer's basement for his job. The court noted that Thom could have declined the job, taken the top rather than the bottom position, or refused to move the furnace into the basement based on the condition of the stairs. The court distinguished the current case from *Estate of Livings v Sage's Investment Group, LLC*, 507 Mich 328; 968 NW2d 397 (2021), because Thom was his own boss while Donna Livings was not. Specifically, Livings was forced to cross an icy parking lot to report for work at a restaurant, while Thom was an independent contractor who was free to decline any job.

The circuit court further rejected that Thom created a genuine issue of material fact that the absence of a handrail was a proximate cause of his injury. The court compared this case to *Ambs v Family Counseling & Shelter Servs of Monroe Co Inc*, unpublished per curiam opinion of the Court of Appeals, issued June 17, 2010 (Docket No. 289652), in which the plaintiff did not know what caused her fall down a stairway, but claimed that a handrail could have prevented it. This Court held that it was mere speculation that the plaintiff would have been able to grab the handrail in a way to prevent her fall especially given that she did not know why she fell.

Thom appeals.

---

[1] As Thom appeals only the dismissal of his premises liability claim, we will not discuss the circuit court's dismissal of his negligence and code violation counts.

## II. ANALYSIS

We review de novo a lower court's resolution of a summary disposition motion. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). "A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim" and should be granted when after reviewing "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party," there remains "no genuine issue regarding any material fact" that could be sent to trial "and the moving party is entitled to judgment as a matter of law." *Id*. (quotation marks and citations omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. at 139-140 (quotation marks and citation omitted). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

## A. EVIDENTIARY ISSUE

While processing Palmer's insurance claim, a representative of Palmer's homeowners' insurance provider interviewed Johns about Thom's fall. Both parties relied on the transcript of Johns' interview, but the circuit court ruled that it was inadmissible hearsay because Johns was not under oath. We review for an abuse of discretion a court's determination regarding the admissibility of evidence. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010).

In relation to a motion for summary disposition, the parties must present "substantively admissible" evidence for the court's review; the evidence "must be admissible in content," but need not "be in an admissible form." *Barnard Mfg Co v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). As explained in *Maiden v Rozwood*, 461 Mich 109, 124 n 6; 597 NW2d 817 (1999), quoting *Winskunas v Birnbaum*, 23 F3d 1264, 1267-1268 (CA 7, 1994) (cleaned up):

> The evidence need not be in admissible form; affidavits are ordinarily not admissible evidence at trial. But it must be admissible in content. Occasional statements in cases that the party opposing summary judgment must present admissible evidence should be understood in this light, as referring to the content or substance, rather than the form, of the submission.

More specifically, hearsay statements may be considered at the summary disposition phase "if they are capable of being admissible at trial." *Fraternal Order of Police, Lodge 1 v City of Camden*, 842 F3d 231, 238 (CA 3, 2016) (cleaned up).

Although the statement containing the interview with Johns was not admissible in form, the content of the interview would have been admissible at trial through Johns' testimony. Therefore, the circuit court should have considered the substance of the statement. However, our consideration of Johns' likely testimony does not affect our conclusion that Thom failed to create a genuine issue of material fact.

B. PREMISES LIABILITY CLAIM

In a premises liability case, "a plaintiff must prove the traditional elements of negligence: (1) that defendant owed the plaintiff a duty, (2) that defendant breached that duty, (3) that the breach was a proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660; 822 NW2d 190 (2012).

Palmer owed Thom a duty as his business invitee "to exercise reasonable care to protect him from an unreasonable risk of harm caused by a dangerous condition on the land." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). An invitor is liable to an invitee for injury caused

> by a condition on the land if the owner: (a) knows of, or by the exercise of reasonable care would discover, the condition and should realize that the condition involves an unreasonable risk of harm to such invitees; (b) should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect invitees against the danger. [*Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000).]

In this case, a combination of factors allegedly merged to create a dangerous condition— inadequate lighting, narrow stair treads, worn step surfaces, and the lack of a handrail. Although Palmer contradicted his testimony, Thom asserted at his deposition that Palmer did not warn him of these conditions or offer to remedy them before Thom began his work. Accordingly, Thom created a genuine issue of material fact that Palmer breached his duty.

Thom testified that he did not "know what caused [him] to fall." However, Thom asserted that if he had been able to grab a handrail, he could have prevented his fall. The circuit court relied on a nonbinding unpublished opinion to find that Thom's theory that he could have prevented the fall was mere speculation. The circuit court also engaged in fact finding by reasoning that Thom's fall was actually caused by the dangerous activity of walking backward while moving the furnace down the stairs. Given the circuit court's improper factual assessment, we will proceed on the assumption that Thom created a genuine issue of material fact on the element of causation as well. And there is no doubt that Thom was injured in the fall.

But a landowner is not liable for an invitee's injury if the danger is so open and obvious "that an invitee may be expected to discover [it] himself." *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 500; 418 NW2d 381 (1988). "A condition is open and obvious if an average user with ordinary intelligence would have been able to discover the danger and the risk presented upon casual inspection." *Bialick v Megan Mary, Inc*, 286 Mich App 359, 363; 780 NW2d 599 (2009) (cleaned up). Although this is an objective test, we note that Thom testified that he noticed the lighting in the area was "kind of poor." He noted that the stairs "were pretty worn." And he observed that the handrail was missing. The danger was open and obvious to him, a reasonable person with ordinary intelligence. The parties also presented photographs with their summary disposition pleadings. Although we cannot judge the lighting from those photographs, it is obvious that there is no handrail, that the steps are narrow, and that the step surfaces are old and worn. The

danger presented by these stairs, especially for someone walking backward while supporting a heavy furnace, was open and obvious.

A landowner may still have a duty to repair or warn in relation to an open and obvious danger "if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee." *Bertrand v Alan Ford, Inc*, 449 Mich 606, 611; 537 NW2d 185 (1995). Thom did not create a genuine issue of material fact that the danger posed by this stairwell was unreasonable. Thom has no idea what caused his fall, but there is no suggestion that poor lighting or slippery surfaces were the cause. And although the absence of a handrail did create a dangerous condition, that danger was not unreasonable. As described in *Bertrand*, 449 Mich at 616-617:

> [B]ecause steps are the type of everyday occurrence that people encounter, under most circumstances, a reasonably prudent person will look where he is going, will observe the steps, and will take appropriate care for his own safety. Under ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary steps "foolproof." Therefore, the risk of harm is not unreasonable. However, where there is something unusual about the steps, because of their "character, location, or surrounding conditions," then the duty of the possessor of land to exercise reasonable care remains. [Citations omitted.]

The lack of a handrail was not unique or so unusual as to make this stairway unreasonably dangerous.[2] Thom admitted that he has often encountered staircases without handrails in his years of delivering and installing furnaces. Being less than ideal does not move a condition into the unreasonably dangerous category.[3]

Thom alternatively contends that this dangerous condition was effectively unavoidable. "[T]he standard for effective unavoidability is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Livings*, 507 Mich at 338 (quotation marks and citation omitted). In *Hoffner v Lanctoe*, 492 Mich 450; 821 NW2d 88 (2012), the Supreme Court held that a customer desiring to enter a business whose only entrance was blocked by ice could not claim that the danger was effectively unavoidable. The customer has a choice whether to visit a commercial establishment and could opt not to encounter the dangerous condition. In *Livings*, 507 Mich at 346, however, the Supreme Court was presented with a plaintiff who was injured by unavoidable snow and ice

---

[2] While the lack of a handrail may have violated building codes, this fact merely "provide[s] some evidence of negligence." *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 720; 737 NW2d 179 (2007). A code violation standing alone does not mean that an open and obvious danger is rendered unreasonably dangerous by special aspects. *Id*.

[3] Thom relied on *Mills v AB Dick Co*, 26 Mich App 164; 182 NW2d 79 (1970), in addressing the danger caused by the lack of a handrail. In *Mills*, however, the side of the stairwell lacking a handrail was open with a deep drop. *Id*. at 167. The plaintiff did not fall backward, but over the side. The staircase in this case was bordered on both sides by walls.

on her way into her place of employment. Given that Michigan experiences significant snow and ice in the winter and businesses do not close for such conditions, the Court reasoned that "a reasonable premises possessor in the defendant's circumstances could reasonably foresee that the employee would confront the hazard despite its obviousness." *Id*. at 346. The Court further held, "It follows that the employee's circumstances are relevant only to the extent they conform to an objectively reasonable standard. Put differently, the employee's decision to confront the hazard to enter his or her workplace is considered under an objective standard." *Id*.

Thom owns his own business and is an independent contractor. He has complete freedom to accept or decline jobs that are offered to him. Thom chose to take this job. He chose to carry the furnace into Palmer's basement despite the lack of a handrail because he had "done it a million times before." He had carried "many, many furnaces" down a staircase "without a guardrail." If he had felt the stairway was unsafe, Thom stated, he would not have carried the furnace down. Thom also stated that he would not have allowed the homeowner to move the furnace down in his stead regardless of the conditions. Thom thereby admitted he had a choice and did not have to take this job. The danger was avoidable.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Sima G. Patel