*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JACOB BLAYLOCK and TYLER SCHLEE,

        Plaintiffs-Appellees,

v

BROOKE MACINTYRE,

        Defendant,

and

BBSB PROPERTIES LLC,

        Defendant-Appellant.

UNPUBLISHED
July 29, 2025
10:51 AM

No. 370688
Wayne Circuit Court
LC No. 22-010645-NO

Before: MARIANI, P.J., and MURRAY and TREBILCOCK, JJ.

PER CURIAM.

In this personal-injury dog-bite case, plaintiffs-appellees Jacob Blaylock and Tyler Schlee (plaintiffs) allege that they were each bitten by defendant Brooke MacIntyre's dog during a New Year's Eve party that MacIntyre held at the condominium where she was living. Plaintiffs initially sued only MacIntyre, but then filed an amended complaint to include a claim of negligence against defendant-appellant, BBSB Properties LLC (BBSB), as the owner of the condo. BBSB filed a motion for summary disposition under MCR 2.116(C)(10), which the trial court denied after a hearing. BBSB now appeals by leave granted.[1] For the reasons that follow, we reverse.

## I. BACKGROUND

MacIntyre's father and stepmother own and operate BBSB, which is a property management company. Sometime during the summer of 2020, BBSB purchased a condo for MacIntyre to live in. On December 31, 2021, MacIntyre hosted a New Year's Eve gathering at

---

[1] *Blaylock v MacIntyre*, unpublished order of the Court of Appeals, entered October 10, 2024 (Docket No. 370688).

the condo. Plaintiffs were among those that attended the party. According to plaintiffs, the dog bit both of them at separate times during the party. Plaintiffs subsequently filed this lawsuit. As noted, plaintiffs initially brought suit against MacIntyre only, but upon taking MacIntyre's deposition, plaintiffs learned that the condo was owned by BBSB. Plaintiffs then successfully moved to amend their complaint to add MacIntyre's father, stepmother,[2] and BBSB as defendants, and to allege a claim of negligence against them.

Shortly after filing its answer to the amended complaint, BBSB moved for summary disposition pursuant to MCR 2.116(C)(10). In essence, BBSB argued that it was entitled to judgment as a matter of law because plaintiff's claim was one of premises liability and the record reflected no genuine issue of material fact that (1) BBSB did not possess or control the condo, (2) BBSB did not own the dog, and (3) BBSB had no knowledge of any alleged vicious propensities of the dog. In response, plaintiffs argued that BBSB—rather than MacIntyre—had possession and control over the condo, and owed plaintiffs a duty of care as licensees on BBSB's property. According to plaintiffs, the record showed that BBSB breached this duty and was therefore liable to plaintiffs for the dog-bite injuries they suffered.

The trial court held a hearing on the motion in March of 2024. The court found that there was a genuine issue of material fact as to whether BBSB had possession and control of the condo, and denied BBSB's motion for summary disposition on that basis. This appeal followed.

## II. DISCUSSION

According to BBSB, the trial court erred by denying its motion for summary disposition because there was no genuine factual dispute that it could not be held liable for plaintiffs' alleged injuries. We agree.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Bartalsky v Osborn*, 337 Mich App 378, 382; 977 NW2d 574 (2021). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and it is "properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Cantina Enterprises II Inc v Property-Owners Ins Co*, ___ Mich App __, ___; ___ NW3d ___ (2024) (Docket No. 363105); slip op at 3-4. All evidence submitted by the parties must be viewed "in the light most favorable to the party opposing the motion," *id*. at ___; slip op at 4, and "shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion," MCR 2.116(G)(6). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *ACLU of Mich v Calhoun Co Sheriff's Office*, 509 Mich 1, 9; 983 NW2d 300 (2022) (quotation marks and citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree." *Green v Pontiac Pub Library*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363459); slip op at 7.

---

[2] MacIntyre's father and stepmother were later dismissed by stipulation of the parties.

Plaintiffs seek to hold BBSB liable in this case on a theory of premises liability. All negligence claims, including premises-liability claims, require a plaintiff to prove four essential elements: duty, breach, causation, and harm. *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023). Duty "is essentially a question whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Id*. In the premises-liability context, the defendant's duty arises from its role "as an owner, possessor, or occupier of land." *Jeffrey-Moise v Williamsburg Towne Houses Coop, Inc*, 336 Mich App 616, 626; 971 NW2d 716 (2021). "The duty owed to a visitor depends on whether the visitor was a trespasser, licensee, or invitee at the time of the injury." *Tripp v Baker*, 346 Mich App 257, 268-269; 12 NW3d 45 (2023) (citation and quotation marks omitted); see *Kandil-Elsayed*, 512 Mich at 111, 143 (recognizing and leaving in place these "three traditional status-based categories").

As the trial court recognized, a significant point of contention in this case has been whether BBSB had possession and control of the condo at the time of the alleged dog bites. BBSB has maintained that it did not, given that MacIntyre was its tenant, and thus a premises-liability claim could not lie against it. Plaintiffs, meanwhile, have argued that BBSB had possession and control and that MacIntyre was not truly a tenant, but instead a licensee of BBSB's—and plaintiffs were BBSB's licensees as well. The trial court found fact questions precluded summary disposition on this issue, but the court erred by ending its analysis there, seemingly assuming that the presence of such questions necessarily meant that BBSB's motion must be denied. As noted, however, BBSB raised other arguments in support of its motion for summary disposition. And one of those arguments—that BBSB had no knowledge of any alleged dangerous propensities of the dog—is sufficient in itself to demonstrate BBSB's entitlement to judgment as a matter of law in this case, even if it is assumed that plaintiffs were, as they claim, BBSB's licensees.

The duty that a premises possessor owes a licensee is well established:

A "licensee" is a person who is privileged to enter the land of another by virtue of the possessor's consent. A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit. Typically, social guests are licensees who assume the ordinary risks associated with their visit. [*Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000) (citations omitted).]

Accordingly, for plaintiffs to prevail on their claim as licensees of BBSB, they must establish, among other things, that BBSB knew or had reason to know of any dangerous propensities of the dog. See *id*.; *Tripp*, 346 Mich App at 269 ("A prima facie case of premises liability arising from a dog bite requires a showing that: (a) the dog is the condition on the land and (b) the defendant had knowledge of the dog's dangerous tendencies."). And as BBSB correctly contends, the record in this case, when viewed in the light most favorable to plaintiffs, reflects no genuine issue of material fact that BBSB did not know or have reason to know of any such propensities.

During her deposition, MacIntyre testified that she adopted the dog sometime near the end of 2020, that the dog had stayed with her continuously since that time, and that her father and

-3-

stepmother had never watched the dog for her. MacIntyre denied that the dog had ever been aggressive or had ever bit anyone, including prior to the alleged incident   In her capacity as representative of BBSB, MacIntyre's stepmother was also deposed. She denied that MacIntyre had ever informed her that the dog had bitten anyone, that she had ever observed the dog being aggressive, or that she had any knowledge of any dog-bite incidents. Nothing in this testimony suggests that BBSB knew or had reason to know of any dangerous propensities that McIntyre's dog may have had.

In arguing that fact questions exist on this issue, plaintiffs point to their own deposition testimony as well as that of another party guest. According to this testimony, the dog bit one other guest in addition to plaintiffs at the same party, was aggressive toward or attacked two other guests at the party, and also bit another individual on a separate occasion. Some of this testimony is hearsay, however, and plaintiffs have made no attempt to demonstrate how it would be admissible. See MCR 2.116(G)(6). And in any event, none of this testimony indicates that any dog bites occurred prior to the party at which plaintiffs claim to have been bitten—let alone that BBSB knew or had reason to know of any such behavior or propensities at any point before those alleged bites.[3]

Plaintiffs also point to veterinary records of the dog, which show that, roughly two months prior to the alleged incident in this case, the dog had received an "exam for anxiety meds" and had been prescribed medication at that time. The records, however, do not elaborate further, including as to whether the examination or prescription pertained specifically to any dangerous propensities of the dog. More to the point, nothing in the record indicates that BBSB knew or had reason to know about any of this. Indeed, when asked about it in her deposition, MacIntyre's stepmother denied that she or her husband had any knowledge of any of it and testified that she did not know why the dog might have been prescribed the medication.

Lastly, and relatedly, plaintiffs argue that BBSB is liable to them because it did not, through the exercise of reasonable care, discover the "unreasonable risk of harm" posed by the dog, such as by inspecting the dog, demanding the dog's veterinary records, or otherwise taking action to determine if the dog was dangerous; it did not warn plaintiffs about the danger posed by the dog; and it did not prevent or keep the premises reasonably safe from that danger. This argument, however, seeks to impose a duty on BBSB beyond even plaintiffs' own theory of the case— namely, that owed to an invitee. See *Kandil-Elsayed*, 512 Mich at 112, 143 (reaffirming that an invitee, as opposed to a licensee or a trespasser, "is entitled to the highest level of protection under premises liability law," which is "the duty to exercise reasonable care to protect [the invitee] from an unreasonable risk of harm caused by a dangerous condition of the land") (quotation marks and citations omitted).

Plaintiffs have maintained throughout this case that they were BBSB's licensees; they have never argued that they were its invitees, nor would the record provide any support for such an

---

[3] On appeal, plaintiffs represent, as they did below, that a nonparty was bitten while dog-sitting *prior* to the alleged incident in this case. But as BBSB has correctly pointed out, this representation is flatly contradicted by the record—including the very testimony that plaintiffs cite in support— which clearly states that the claimed incident occurred at some point *after* the party where plaintiffs were allegedly bitten.

argument. And as discussed, a "landowner owes a licensee no duty of inspection or affirmative care to make the premises safe for the licensee's visit." *Stitt*, 462 Mich at 596. Instead, "[a] landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved." *Id.* For the reasons discussed, the record, when viewed in the light most favorable to plaintiffs, reflects no genuine issue of material fact that BBSB did not breach this duty—a conclusion that holds and is dispositive regardless of any factual disputes over whether BBSB even owed plaintiffs any such duty in the first place. Accordingly, BBSB is entitled to judgment as a matter of law on plaintiffs' negligence claim, and the trial court reversibly erred by denying BBSB's motion for summary disposition.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Christopher M. Trebilcock